## THE STATE v. GRANT, *Appellant.*

### Division Two, May 17, 1898.

1. **Criminal Law:** ASSAULT: INTENT: EVIDENCE. No better evidence can be induced of defendant's intent to kill at the time he fired the shot from a deadly weapon, than the fact that it entered a vital part and the serious consequences of such shot. From such shooting, in the absence of countervailing testimony, the law presumes intent to kill.

2. ———: ———: ———: INDICTMENT: SHOOTING "AT." And it is of no consequence, in the face of such results, that the indictment charged defendant with shooting *at* the prosecuting witness, with intent to kill him, instead of shooting or wounding him with such weapon.

3. ———: ———: ———: ———: DRUNKEN HABITS: IMPEACHMENT. The prosecuting witness testified that defendant was under the influence of liquor at the time of the assault, and this defendant denied, and on cross-examination the State was permitted to examine him as to his custom and habit with respect to taking whiskey home with him when he went to town. *Held*, that this cross-examination was not material to the issues of the case, and should not have been permitted. *Held*, also that, as the cross-examination was concerning an immaterial matter, it could not be permitted for the purpose of laying a foundation for impeaching defendant's testimony.

4. ———: EVIDENCE: IMPEACHMENT. Where the facts detailed in the question asked defendant for the purposes of impeachment, differ so slightly from the real facts as told by the impeaching witness that they can not be prejudicial to him, no error has been committed.

5. ———: ———: ———: FORMER CONVICTION. Evidence that defendant had been convicted of the unlawful sale of liquor is not permissible for the purpose of discrediting his testimony, even when elicited from a cross-examination of defendant's witnesses. It follows that a statement that he was about to be arrested for that offense was not permissible.

6. ———: ———: GOOD CHARACTER. An attempt by the State to prove the good character and reputation for peace of the prosecuting witness, when it had not been attacked, is not error, if done without the objection of defendant.

State v. Grant.

7.. ————: PRACTICE: REMARKS OF ATTORNEY. Improper remarks of the State's attorney can not be considered by this court on appeal unless they are preserved in the bill of exceptions. A statement of them in the bill of exceptions is not sufficient.

8. ————: ASSAULT IN VITAL PART: INSTRUCTION. This instruction was held proper in the face of an objection that it does not state that the shot must have been intentionally fired at a vital part: "The court instructs the jury that the law presumes that a person intends the natural and probable consequences of his acts, and if you believe from the evidence in the case that the defendant assaulted with a deadly weapon, a loaded pistol, David Cook, in a vital part of the body, the law presumes that defendant intended to kill him."

9. ————: ————: MALICE: AFORETHOUGHT. Where an indictment is drawn under section 3489, Revised Statutes 1889, charging "assault with intent to kill on purpose and of malice aforethought," the defendant may be convicted under section 3490, for assault with intent to kill without malice. And an instruction which permitted a conviction of an assault with intent to kill, without requiring the jury to find that it was maliciously done, was not error.

*Appeal from Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*Turner & Hinton* for appellant.

(1) The prosecuting witness, Cook, was permitted to testify that his wound had been attended with very serious consequences; that an operation had been performed, but without success; and that his leg was paralyzed and practically useless. The defendant was not charged with maiming or wounding the prosecuting witness, but with shooting at him with the intent to kill. Under this charge the defendant's guilt or innocence did not in the slightest degree depend on the effects or consequences of his shot, but purely and solely on the specific intent entertained by him when the shot was fired. (2) In the cross-examination of the defendant the prosecuting attorney was permitted to interrogate him as to his custom and habit with

reference to taking home whiskey when he came to town, and to elicit the fact that he usually took some home, sometimes one quantity and sometimes another. No such matter had been gone into in his direct examination. This testimony of defendant as to what he actually did on that particular day did not open up an inquiry as to what his habit and practice had been prior to that time. *State v. Patterson*, 88 Mo. 88. Nor can it be said that such error was harmless. There are any number of men who are violently prejudiced against the use of intoxicants, and if any of the jurors entertained such views, this testimony must necessarily have prejudiced them more or less against the defendant. *State v. Rogers*, 108 Mo. 202; *Lohart v. Buchanan*, 50 Mo. 201. The jury were not posted on the difference between material and immaterial matters. To them this evidence must have seemed just as effective in contradicting and discrediting the defendant as if it had been directed to a vital question. (3) There was no sufficient foundation laid for proving a statement entirely different in every particular from that to which defendant's attention had been called. He was given no opportunity to explain the statement detailed by Barnes. *Spohn v. Railroad*, 116 Mo. 631; *Baker v. Shaw*, 35 Mo. App. 620. (4) On cross-examination the prosecuting attorney was permitted to show by Wilson, over defendant's objection, that on some occasion the defendant had gotten into some kind of trouble over a sale of some whiskey, and had been threatened with arrest. It was certainly not competent to inquire into a specific delinquency of the defendant, or to show that he had been threatened with arrest on a misdemeanor charge not affecting his general moral character. *Gardner v. Railroad*, 135 Mo. 90; *State v. Donnelly*, 130 Mo. 642; *State v. Howard*, 102 Mo. 142. The State was thus enabled to inject a

little more whiskey into the case and put the defendant
in the attitude of a whiskey seller, and a law-breaking
one at that.   (5) The court erred in giving the State's
third instruction by which the jury were informed
without qualification that if the defendant shot the
prosecuting witness in a vital part of the body, then
the law presumed that he intended to kill him.   This
instruction was fatally defective in omitting the import-
ant element that the shot must have been intention-
ally fired at a vital part.   *State v. McKinzie*, 102 Mo.
620; *State v. Bohanan*, 76 Mo. 562; *State v. Harris*,
76 Mo. 361; *State v. Palmer*, 88 Mo. 568.   (6)   Under
the circumstances presented by this case this instruc-
tion invaded the province of the jury.   The indictment
charged the defendant with shooting with a specific in-
tent.   The defendant denied the existence of such an
intent.   Thus the intent became an issue of fact which
the State was bound to prove like any other fact.   *Gilbert
v. State*, 16 S. E. Rep. (Ga.) 652; *People v. Landman*,
37 Pac. Rep. (Cal.) 518; *State v. Palmer*, 88 Mo. 568;
*State v. Banks*, 73 Mo. 592; *Moberly v. Railroad*, 98
Mo. 183; *Bluedorn v. Railroad*, 121 Mo. 258; *State v.
McKinzie*, 102 Mo. 620.   (7)   The fourth instruction
for the State defining assault with intent to kill under
section 3490, Revised Statutes 1889, by which the jury
were simply told that the defendant was guilty if he
shot at the prosecuting witness with a pistol with the
intent to kill him, was fatally defective in failing to re-
quire the jury to find that the shooting was done
maliciously and with a felonious intent to kill.   *State
v. Hickman*, 95 Mo. 322; *State v. Lackland*, 136 Mo. 26.

*Edward C. Crow*, Attorney-General, and *Sam B.
Jeffries*, Assistant Attorney-General, for the State.

(1)   An attack is made upon the verdict, defend-
ant charging the same to be informal and insufficient

to support a judgment. The verdict is as follows: "We, the jury, find the defendant guilty, and place his punishment at three years in the State penitentiary." There was but one count in the indictment, and the evidence introduced showed defendant to be guilty of the charge there stated. The instructions were also based upon the charge laid in the indictment, and no other degree of the offense was presented to the jury than that contained in the indictment, to wit, "assault to kill." Under such circumstances a general verdict is sufficient. *State v. Siviles*, 105 Mo. 530; *State v. Stepton*, 65 Mo. 640; *State v. Matrassey*, 47 Mo. 296; *State v. Pitts*, 58 Mo. 558; *State v. Davidson*, 38 Mo. 374. (2) The jury have the right to know the full consequences of the act so as to judge of the gravity of the offense and thereby properly assess the punishment against defendant. (3) Defendant undertook to show that the prosecuting witness was a quarrelsome man and had been frequently engaged in neighborhood difficulties. The court then permitted counsel for the State to ask Mr. Cook to explain the difficulty he had had with one Frank Williamson. Defendant objected to his right to explain. We see no error on that account for the reason that if the fact of the previous trouble was admissible against the witness or in favor of defendant, the jury had a right to know all the circumstances in the controversy. (4) Error is also imputed to the trial court in permitting the State to interrogate the defendant as to statements made by him in regard to the difficulty in controversy to the officer to whom he surrendered himself. This evidence was material and proper for impeaching purposes and to discredit the evidence of defendant at the trial. It is always admissible to show that a witness made statements out of court, different from those made while on the stand testifying; and in order for the State to contradict or impeach

the evidence of the defendant, it was necessary to inter-
rogate the witness in this manner and on that particular
subject. The specific objection made by defendant is
without ground for the reason that the defendant had in
his examination in chief testified fully as to all particu-
lars regarding the personal difficulty between him and
Mr. Cook and the assault in issue. (5) In the course
of the trial below the State offered and introduced evi-
dence touching the general reputation of defendant's
character. Counsel for defendant object to the in-
troduction of such evidence. It will be observed that
defendant went upon the stand and testified in his own
behalf, and under such state of facts evidence of this
character was clearly admissible. *State v. Palmer*, 88
Mo. 571; *State v. Greason*, 38 Mo. 372; *State v. Clin-
ton*, 67 Mo. 380.

BURGESS, J.—The defendant was convicted in the
circuit court of Boone county of the crime of assault
with intent to kill one David W. Cook, by shooting at
him with a pistol, and his punishment fixed at three
years' imprisonment in the State penitentiary. He has
appealed.

At the time of the difficulty the defendant and
Cook were neighbors living near each other, but upon
opposite sides of a road, six or seven miles from Colum-
bia in said county. Their residences were about two
hundred yards apart. In the afternoon of July 18,
1896, Cook and a man by the name of Andrews were
in a lot on Cook's farm near the road, taking the can-
vass off a binder, about which work it became necessary
to have a wrench, and Cook went to his house to get
one. In the meantime defendant returned from town,
where he had been to have some ploughs sharpened,
which he then had in his wagon, and, under the influence
of liquor, he had stopped and was talking to Andrews.

As soon as Cook came up defendant drove on up in front of his house, entered his pasture and drove down on the inside of his fence until he arrived at the point where Cook and Andrews were at work. Cook and defendant then had some words in regard to a religous meeting which was going on in that neighborhood, in the course of which the defendant called Cook a d—n liar. · By this time Cook had gotten to the fence on the opposite side of the road from defendant. When the defendant called Cook a d—n liar, he jumped out of his wagon and ran his hand in his pocket as if he was going to draw his revolver. Cook then said to him, "You have got a revolver, and you are going to shoot, you stinking old coward." To which defendant replied "yes damn you; I am." Cook had gotten over the fence into the road by this time, and defendant began to shoot, and when he fired the first shot Cook ran towards him, but defendant fired three shots before Cook got to him and grabbed the barrel of the pistol. They then grappled with each other for the possession of the pistol, when it was again discharged by defendant, the ball entering to the left of Cook's navel, ranging downward and lodging in his groin. When Cook was shot he fell to the ground, and defendant jumped on him, but he threw him off and got on top of him. Cook then struck him a time or two in the face, with his fist. He had no weapons about him. He and Grant had never had any trouble before. After the shooting Cook went to St. Louis and was operated upon. The surgeons cut into his leg, but were unable to find the bullet. Up to the time of the trial he had not been able to use the leg on the side of the injury. It seemed to be paralyzed.

I. The evidence of Cook with respect to the extent of his injury, and the operation which he underwent in consequence thereof, was admitted over the

objection and exception of defendant. This ruling is assigned for error. The contention is that this evidence was irrelevant under the charge in the indictment; that the charge being shooting at Cook with intent to kill, the defendant's guilt did not in the slightest degree depend on the effects or consequences of his shot, but solely on the specific intent entertained by defendant when he fired it. We are unable to concur in this view. No better evidence could be adduced, we think, as to the intent of defendant to kill at the time he fired the shot than that it entered a vital part and its serious consequences, and it makes no difference that the indictment charged defendant with shooting *at*, with intent to kill, instead of shooting or wounding with such intent. The rule is the same. It can not be doubted that the serious wounding of Cook in a vital part was some stronger evidence of defendant's intention to kill him, than if he had wounded him but slightly in some part not vital. From this wounding, in the absence of countervailing testimony or circumstances, the law will presume an intent to kill, and this evidence only tended to show what the law presumes.

II.    In the cross-examination of the defendant, who testified as a witness in his own behalf, the prosecuting attorney was permitted over the objection of defendant, to interrogate him as to his custom and habit with respect to taking home whiskey when he came to town. Cook had testified that defendant was drunk or under the influence of liquor at the time of the difficulty, which was denied by defendant, who also testified that he only took one moderate drink that day, and that was out of a half pint while on his way home, which he had purchased just before starting. As to what defendant's custom was with respect to taking whiskey home with him when he came to town, it was in no way relative to the issues involved in this case, and

should not have been admitted. He denied being drunk at the time of the difficulty it is true, and stated that he only took one drink on that day, and that was while he was enroute home. But these statements did not justify his cross-examination as to his custom in taking whiskey home with him when he came to town. Section 4218, Revised Statutes 1889. Nor was it admissible for the purpose of laying a foundation to impeach him by proving to the contrary, because the cross-examination was with respect to an immaterial matter. *State v. Avery*, 113 Mo. 475. The same may be said with regard to the cross-examination of defendant as to being intoxicated when he voluntarily surrendered to the sheriff the evening after the difficulty. It was immaterial.

III. During the cross-examination of defendant he was also asked if he had not stated to one William Barnes on Sunday following the shooting, that at the time of the shooting Cook was on him beating him with a monkey wrench, and that he shot him off of him. Defendant answered that he did not make the statement. The State thereafter introduced said Barnes as a witness and asked him if defendant made the statement to him. The witness answered, "No sir, not just that way." The State was then permitted to prove by Barnes over the objection of defendant that defendant told him that Cook was coming at him and struck him with something; that he was dazed for the moment and fell; and when he recovered his senses, Cook was on him; that he had the pistol in his hand between him and Cook, and fired it. It is insisted that no sufficient foundation was laid for proving by Barnes the statement made to defendant by him for the purpose of impeaching him. The discrepancy between defendant's statement to Barnes as testified to by Barnes, and the question propounded to defendant on

his cross-examination was so slight, that it is impossible to perceive how defendant could have been prejudiced thereby.

IV.   Defendant introduced a number of witnesses to prove that he was of good character, and among the rest one W. S. Wilson, who testified that he had known defendant about twenty-five or thirty years, and that he had never heard his honesty and truthfulness discussed, but that he had heard, and knew that he drank sometimes, and was a little boisterous.   Then over defendant's objections the State was permitted to ask the witness the following question.

"*Q*.   Did you ever hear of this defendant being arrested by the United States authorities for selling liquor?   *A*.   I don't know that he was arrested, but he was about to be arrested."

The evidence elicited from this witness upon cross-examination was clearly beyond the range of legitimate inquiry.   Even the conviction of the defendant of the unlawful sale of liquor, had such been the case, would not have been permissible for the purpose of discrediting his testimony, much less the statement that he was at some indefinite time about to be arrested for such an offense.   *State v. Smith*, 125 Mo. 2; *State v. Taylor*, 98 Mo. 240; *State v. Warren*, 57 Mo. App. 502; *State v. Donnelly*, 130 Mo. 642.

V.   There was no error in the mere fact that the State offered testimony to prove the good character and reputation for peace and good order of the prosecuting witness when it had not been attacked by the defense.   The objection to such testimony was promptly sustained when it was offered.   The trial court can not be convicted of error under such circumstances.   But in this connection it is insisted that notwithstanding the ruling of the court in excluding the

proffered evidence as to Cook's good character for peace and good order, one of the attorneys for the State was permitted, over the objection of the defendant, and without rebuke from the court, to argue and comment on the excluded evidence, and to state that the State was prepared to, and could have established it by forty of the best citizens in the community, but for the technical objection of the defendant. This contention, however, is not borne out by the record as the objectionable remarks were not preserved by the bill of exceptions. It is true that this question was raised in the motion for a new trial, but facts stated in such a motion do not prove themselves. They must be preserved by bill of exceptions or otherwise proved, otherwise they will not be noticed on appeal, even if erroneous. *State v. Smith*, 114 Mo. 406; *State v. Foster*, 115 Mo. 448; *State v. Welsor*, 117 Mo. 570.

VI. The third instruction given on behalf of the State is criticised upon the ground that it does not say that the shot must have been intentionally fired at a vital part. The instruction reads as follows: "3. The court instructs the jury that the law presumes that a person intends the natural and probable consequences of his acts, and if you believe from the evidence in the case that the defendant assaulted with a deadly weapon, a loaded pistol, David Cook, in a vital part of the body, the law presumes that defendant intended to kill him."

This instruction is in accord with the well-settled law as repeatedly announced by this court. If a person assaults another with a deadly weapon in a vital part of the body, then the law presumes that he intended to do so, that is, that he intended to assault him in a vital part, for such is the natural and logical presumption flowing from the use of the deadly weapon under such circumstances. In this case the

evidence showed that the shot that penetrated the body of Cook was intentionally fired by defendant and that it struck him in a vital part of the body, hence, the presumption follows that he intended to kill him. *State v. Landgraf*, 95 Mo. 97; *State v. Tabor*, 95 Mo. 585; *State v. Wisdom*, 84 Mo. 177; *State v. Thomas*, 78 Mo. 327; *State v. Musick*, 101 Mo. 260; *State v. Patterson*, 116 Mo. 505. The criticism is, we think, without merit.

VII. It is insisted that the State's fourth instruction was fatally defective in that it told the jury that if defendant intentionally shot at David Cook with a pistol, which was a deadly weapon, with intent to kill him, they would find him guilty without requiring them to find, as condition precedent, that the shooting was malicious and with a felonious intent. The indictment in this case was for assault with intent to kill on purpose and of malice aforethought and was drawn under section 3489, Revised Statutes 1889, but the instruction under consideration was drawn under, and the defendant convicted under the following section 3490, as he might be, for assault with intent to kill without malice. It was not necessary, therefore, that the jury should have been instructed in order to a conviction that they must believe that the shooting was done maliciously and with a felonious intent to kill, or either one.

VIII. The State's seventh, eighth, and ninth instructions are also criticised, but a careful reading of them has satisfied us that the criticism is without merit. Similar instructions have been often approved by this court.

From what has been said it follows that the judgment must be reversed and the cause remanded for further trial in accordance with this opinion. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.