THE STATE v. SILK, *Appellant.*

In Banc, June 25, 1898.

1. **Murder:** INDICTMENT: "WITH LEADEN BALLS," ETC. The indictment charged that the defendant "with a dangerous and deadly weapon. to wit, a revolving pistol then and there loaded with gunpowder and leaden balls . . . . . in and upon the body of him . . . . . did shoot, strike and penetrate him, the said Hellensmith, thereby, then and there with the said deadly weapon." *Held,* that the objection that the indictment does not allege that leaden balls struck and penetrated the body of deceased, and that defendant was therefore not sufficiently advised of the charge against him, can not be sustained. But it is also *held* that it would have been better pleading to have followed the usual formula, to wit, that the said defendant "with the leaden balls aforesaid . . . . . did strike, penetrate and wound," etc.

2. ———: IN THE SECOND DEGREE. The presumption of murder in the second degree is raised if the evidence shows an intentional killing with a deadly weapon, without any lawful provocation.

3. ———: INSTRUCTION: INTENT TO KILL. An instruction concerning "willfully" and "intention to kill," like those in *State v. See,* 85 Mo. 647, and *State v. Fairlamb,* 121 Mo. 137, is set out in the opinion, and again approved.

*Appeal from Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*F. P. Wiley* and *A. H. Waller* for appellant.

(1) The indictment is bad. It is too indefinite and uncertain, and does not state facts sufficient to charge the crime of murder in either degree. *State v. Meyers,* 99 Mo. 114; *State v. Green,* 111 Mo. 588; *State v. Fairlamb,* 121 Mo. 153; *State v. Rector,* 126 Mo. 340. (2) The court erred in giving to the jury instructions on murder in the second degree and in directing the jury that they might find defendant guilty of murder in the second degree, for the reason that there was no evidence warranting such instructions or sufficient to sustain a verdict and judgment for said offense. *State v. Turlington,* 102 Mo. 660; *State v. Smith,* 114 Mo. 420; *State v. Sneed,* 91 Mo. 559; *State v. Reed,* 117 Mo. 614; *State v. Henson,* 106 Mo. 70. (3) The court erred in giving the State's instruction number four. Appellant's defense was that the shot that killed deceased was accidentally and unintentionally discharged, and the court in said instruction told the jury that if defendant shot the deceased with a pistol in a vital part and killed him, the law presumed that defendant intended to kill the deceased, unless the facts and circumstances in evidence showed the contrary. No such presumption arises, unless the shot

was intentionally discharged. Besides, this instruction shifts the burden of proof onto the defendant to prove himself not guilty. *State v. McKenzie*, 102 Mo. 620; *State v. Evans*, 124 Mo. 411; *State v. Fairlamb*, 121 Mo. 146; *State v. Crawford*, 115 Mo. 632.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Every necessary averment is contained in the indictment. It clearly notified defendant of the full purport of the charge against him and is sufficient to support and warrant a verdict of murder in the second degree. *State v. Anderson*, 89 Mo. 312; *State v. Steptoe*, 65 Mo. 640; *State v. Bean*, 69 Mo. 317; *State v. Snell*, 78 Mo. 240; *State v. Paxton*, 90 Mo. 220; *State v. Herrell*, 97 Mo. 105; *State v. Frazier*, 137 Mo. 318. (2) The evidence clearly warrants an instruction for murder in the second degree. It shows it to be questionable whether the act, if committed willfully, was committed with deliberation, which is necessary in murder of the first degree. We are not unmindful of the rule that if there was no evidence to prove a particular degree of murder, no instruction should be given as to that degree; but in the case at bar the trial court does not appear to have abused this rule. It is as much the duty of the court to give instructions authorized by the evidence as to refuse those not authorized. (3) The defendant undertakes to impute error in the giving of instruction four on the part of the State. This instruction is worded in the proper manner. *State v. McKinzie*, 102 Mo. 620. A revolver is a deadly weapon and does not necessitate proof thereof that it is such. It is so presumed. "Where a dangerous and deadly weapon is used with violence upon the person of another, as this has a direct tendency

to destroy life or to do some great bodily harm to the
person, the intention to take life, or to do some great
bodily harm, is the necessary conclusion of the fact."
*State v. Fairland*, 121 Mo. 147; *Com. v. Webster*, 5
Cush. 305; *State v. Crawford*, 115 Mo. 620; *State v.
Edwards*, 71 Mo. 312; *State v. Gassert*, 65 Mo. 354.

IN DIVISION TWO, MARCH 1, 1898.

GANTT, P. J.—From a conviction of murder in the
second degree the defendant appeals.    The indictment
was preferred at the July term, 1896, of the Randolph
circuit court.    The defendant was duly arraigned and
the cause was continued twice on his application.    He
was tried at the July term, 1897, and sentenced to the
penitentiary for twenty years.

These facts were substantially shown on the trial.
Elisha Silk, the defendant, is a man over the age of
sixty years, a resident of the city of Moberly in this
State for more than fifteen years.    At the time of the
commission of the offense, he was and had been street
commissioner of the city of Moberly, and in his effort
to exercise, do and perform the duties of his office in
the way of taking up and impounding stock running
at large within the city limits, he committed the act
for which he was tried and convicted.    Complaint had
been made to the defendant and also to the mayor of
the city that stock had been and was running at large
in the north and northeastern portion of the city.    He
was instructed by the mayor to take up said stock and
place it in the city pound.    On Sunday morning, June
21, 1896, the defendant on horseback and with his son
James and one Tuggle, went to the territory where the
stock was running at large for the purpose of executing
his official duty.    On his way defendant notified sev-
eral persons whose horses were running out to take
them in and save cost and trouble, as complaint had

been made.   On reaching that part of the city where the stock was running at large he found about twelve head of cows grazing on vacant lots within the city limits.   He requested his son and the other gentleman who was with him to come to his assistance and drive the cattle west toward Morley street.   Young Hellensmith, the deceased, was at that time sitting with a number of other boys in front of a greenhouse on Morley street, and upon seeing the defendant driving his cattle toward the city, started toward him, claiming to the defendant that he was in charge of the cows and insisted upon his being permitted to take them outside of the city limits to graze.   The defendant continued to drive the cattle toward Morley street, paying no particular attention to the boy, other than insisting upon impounding them.   As he drove the cattle toward Morley street the boy approached him from the west and after meeting him, turned and walked along the side of the cattle with the defendant, at the same time trying to drive the cattle back to the east and out of the city limits.   It appears that a few moments before the shooting took place he ran around defendant's horse, threw up his hands in which he held a bunch of grass, weeds or his hat, and at the same time stating that the cattle were in his charge and that he expected to take them outside of the city limits, when defendant's horse jumped to one side.   At this juncture defendant threw his right hand into his right hip pocket, drawing his revolver and saying to the young man, "Stand back, or I will shoot you; you have been warned of this before, stand back," and as he said "Stand back" the last time, he pointed his revolver at the young man and fired, the bullet striking and proving fatal.   This statement seems to be borne out by a number of witnesses who were introduced on the part of the State, in fact it does not seem to be denied by

the defendant.   The only defense set up by defendant is that the act was committed accidentally; that his only purpose in drawing the revolver was to scare the boy so that he would not further molest him in the exercise of his official duties.   There was evidence tending to prove that after defendant had told the boy to stand back the last time, he raised his revolver, pointed it at him and after taking aim, fired.   After defendant had fired the shot his horse trotted off about two hundred yards, when he alighted and walked up to where the young man was, and finding what he had done and the gravity of the act, went at once to the city hall and placed himself in the hands of the proper authorities.   The evidence in the case is that the defendant is a man of good reputation as a law-abiding citizen.

The gravity of the case requires an examination and consideration of each ground assigned for a reversal of the sentence.

I.   The sufficiency of the indictment is questioned because it does not allege that the leaden balls struck and penetrated the body of the deceased.   The indictment charges that the defendant at the county of Randolph on the twenty-first day of June, 1896, in and upon one John Hellensmith, then and there being, unlawfully, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did make an assault with intent, him, the said John Hellensmith, to kill and murder, and with a dangerous and deadly weapon, to wit, a revolving pistol, then and there loaded with gunpowder and leaden balls, which he, the said defendant, then and there had and held in his right hand, in and upon the left side of the body of him, the said John Hellensmith, unlawfully, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did shoot, strike

and penetrate him, the said Hellensmith, *thereby, then and there with said deadly weapon,* unlawfully, willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, giving to him, the said John Hellensmith, in and upon the left side of the body of him, the said Hellensmith, one mortal wound of the length of one fourth of an inch, and of the width of one fourth of an inch, and of the depth of four inches, · of which said mortal wound so given by him, the said Elisha Silk, in the manner aforesaid and by the means aforesaid, he, the said John Hellensmith, then and there immediately died, and concluding "and so the grand jurors," etc., in due and approved form.

It is true as contended by defendant that the usual formula to be found in the most approved precedents, to wit, "and the said Elisha Silk, with the leaden balls aforesaid, out of the pistol aforesaid, then and there by the force of the gunpowder aforesaid, by the said Elisha Silk discharged and shot off as aforesaid, did strike, penetrate and wound said Hellensmith," is not to be found in this indictment and the question arises is such an averment absolutely essential in an indictment which otherwise charges the felonious assault with a deadly weapon, to wit, a pistol then and there loaded with gunpowder and leaden balls and with which defendant shot at, struck and penetrated the deceased, giving him a mortal wound. We confess that a diligent search has not enabled us to find an exact precedent for this indictment. But in *Veatch v. The State*, 56 Ind. 584, we find an indictment substantially like this which met the unanimous approval of the Supreme Court of Indiana. In that case as in this the defendant was charged with shooting and mortally wounding the body of one Murray, "with a gun loaded with gunpowder and leaden balls which the said defendant then and there had and held in his hands." There was no aver-

ment that by the shooting of said gun the leaden balls were driven or forced into the body and thereby inflicted the mortal wounds.

In South Carolina in *State v. Freeman*, 1 Spears, 65, it was complained that the indictment while charging that the defendant did shoot off and discharge a certain rifle gun loaded with gunpowder and leaden bullets, did not allege that the contents were discharged, but EARLE, judge for the whole court, said: "We think otherwise. To say 'with a gun did shoot off and discharge' may be an unusual form of expression, but we can not say it is inaccurate and certainly it is not senseless." When it is added that he did shoot off and discharge with a gun, charged with gunpowder and leaden balls, the inference seems to be one of absolute certainty that the contents of the gun were shot off and discharged for there is nothing else to which these words could be applied. The allegation in substance is, that the prisoner with a gun charged with powder and bullets, did shoot and discharge at the deceased."

The indictment in this case is stronger than in *Freeman's* case in that it not only charges that the prisoner did with pistol loaded with gunpowder and leaden balls "shoot," which Judge RICHARDSON, in *State v. Vaughn*, 26 Mo. 29, says necessarily implies "shot at," but did "strike and penetrate" the body of the deceased, thereby giving him a mortal wound. While we think that certainty and adherence to long settled precedents should be observed and in the course of time insures a consistent administration of justice, we are not unmindful of the fact that one by one many of the allegations of indictments for murder at common law have become obsolete, and unless absolutely essential, a judgment of conviction ought not to be set aside for the want of an averment, even though usual and

customary.   When it is said in common parlance that one man shot another with a loaded gun or pistol and inflicted a mortal wound, no one doubts for a moment that the wound was inflicted by the contents of the gun or pistol, and so in this case we can not doubt that the defendant was informed and so understood the charge against him, and to reverse a cause of this gravity upon such a ground would be to ignore the well understood and commonly accepted meaning of plain words.   We are not to be understood, however, as apologizing for or excusing the neglect to use the long established precedents for indictments for murder. They are to be had on every hand.   Our reports teem with them.   They are to be found in Chitty's General Practice, in Wharton's Precedents, Kelly's Criminal Law, and many other works on criminal law and practice, and the prosecuting attorneys have no right to devolve upon this court the labor of defending their inartistic work when the forms are ready made for their use.

While this indictment would have been better and more specific with the allegation "that with the leaden balls so shot out of said pistol the mortal wound was inflicted," etc., and no reason can be given for not following the usual form, we are unable to say that it does not advise defendant of the nature of the charge against him or to see that he has been prejudiced thereby.

II.   It is urged that the offense was murder in the first degree or nothing; that the court ought not to have instructed for murder in the second degree.   We do not concur in this view of the testimony.   We think the evidence shows an intentional killing with a deadly weapon which alone raises the presumption of murder in the second degree.   The burden of showing the circumstances of deliberation rests upon the State, and the jury were justified in refusing to believe that this

grown man who had previously borne the reputation of a law abiding citizen deliberately proposed to kill this boy simply for insisting upon the privilege of herding his cows outside of the corporate limits of the city. No previous difficulty or ill will existed between the boy and the defendant, and the jury were authorized to find murder in the second degree because of the intentional killing with a deadly weapon, without any lawful provocation therefor. The evidence justified the jury in believing and finding that defendant had no expectation of shooting the boy when he went to drive the cattle away, but became enraged at the persistency of the boy in insisting on driving the cattle out of the limits, and under these circumstances drew his revolver and fired the fatal shot, without, as we have said, any lawful provocation whatever, and this, without proof of circumstances of deliberation, was murder in the second degree. *State v. Foster*, 61 Mo. 549; *State v. Hudson*, 59 Mo. 135; *State v. Young*, 119 Mo. 495; *State v. Fairlamb*, 121 Mo. 137.

III. Again it is urged that the court erred in giving the following instruction for the State: "Willfully means intentionally, not accidentally. In the absence of qualifying facts and circumstances, the law presumes that a person intends the ordinary and probable result of his acts. If you believe from the evidence beyond a reasonable doubt, that the defendant, Elisha Silk, with a pistol, shot John Hellensmith in a vital part and killed him, you will find that the defendant intended to kill him, unless the facts and circumstances given in the evidence show the contrary."

This instruction was given in *State v. Gee*, 85 Mo. 647, and in *State v. Fairlamb*, 121 Mo. 137, an instruction substantially like it was expressly approved. If there were no precedent, however, it announces correct legal principles and was not erroneous.

IV.   We have considered the objections to the other instructions and find no reversible error in them. They have again and again met our approval and there was evidence in this case upon which to predicate them.

The judgment is affirmed.   BURGESS, J., concurs. SHERWOOD, J., dissents as to the first paragraph, and holds the indictment insufficient.

IN BANC, JUNE 25, 1898.

PER CURIAM.—The foregoing opinion in the above entitled cause by GANTT, P. J., in Division No. 2 of this court having been reheard by the Court *in banc*, is now affirmed by the Court *in banc*.   GANTT, C. J., and BURGESS, ROBINSON, BRACE and WILLIAMS, JJ., con-concurring therein, and SHERWOOD and MARSHALL, JJ., dissenting.