STATE v. DILL TAYLOR, Appellant.—No. 40491.—205 S. W. (2d) 734.

Division One, November 10, 1947.

*S. E. Osborn, Lee Crook* and *Lewis B. Hoff* for appellant.

*J. E. Taylor,* Attorney General, and *W. Brady Duncan,* Assistant Attorney General, for respondent.

1218

DOUGLAS, P. J.—Dill Taylor was sentenced to ten years imprisonment for the second degree murder of his friend Mattie Keith. He appealed.

Mattie (probably short for Matthew) Keith, 62 years old, and his brother Bill Keith, 76 years old, lived together in a cabin in the country outside of Caplinger Mills in Cedar County. Mattie raised and trained hunting dogs. Dill Taylor would bring his dogs out to the Keiths about every ▮▮▮ Saturday night to get the Keiths to go hunting with him. He would usually show up drunk and if the Keiths would not go hunting he would fight them. A number of times the Keiths hid from him to avoid going hunting. On the evening of the murder Mattie had told his brother Bill he was not going hunting that night. He had also told Dill in the afternoon he did not want to hunt that night. When Dill arrived that evening in his automobile, driven by Jean Robin, with Dill's brother Johnnie and their dogs, Mattie came out of the cabin and told him he would not go hunting and tried to beg off. They were arguing back and forth when Bill Keith came out of the cabin to prevent a quarrel, telling

Dill to take his dogs and go away. Thereupon, Dill jumped out of the automobile and attacked Bill. He beat him brutally, and knocked him to the ground. All the time Jean remained in the automobile sitting in the driver's seat. It was growing dark but the cabin door was open and light came from the opening. The automobile was standing about 20 feet from the cabin. When Dill had Bill Keith on the ground Mattie rushed in and pulled Dill off of him. They scuffled. Jean testified he heard a hit and saw Mattie go down. Then he heard a second hit, and heard Dill say "You lay there now." Then Dill went over to Bill, who was still on the ground, and asked him if he had enough. Next Dill went into the house and asked those inside "if they wanted any of it." He then came outside and, testified Jean, "then I heard something drop on the ground." Dill told Jean to drive him back to town. Jean turned on the car lights and commenced to back the automobile. He saw Mattie in the pathway of his lights motionless on the ground. Blood was coming from his head above his left ear. Dill remarked to Jean that "he hoped he did not kill him." Dill's clothes were bloody but he was uninjured. Jean went home with Dill and spent the night. The next morning they were told that Mattie was dead and Dill warned Jean: "Don't tell who done it."

Bill Keith came to, and crawled into the cabin. He and three others slept the night there. The next morning they found Mattie dead on the ground, apparently where he had dropped. A neighbor found a rock by the cabin near the door. The rock was stained with human blood.

The coroner testified Mattie had a small wound on his chin, another below his left ear, another on top of his head, and the fatal wound was back of his left ear where his skull was crushed and pierced. The coroner placed the rock at the depression in Mattie's skull and found it fit the depression and the hole in the skull.

The evidence shows a brutal assault with a weapon used in a manner to produce the death which resulted, without cause or provocation. It is sufficient to support the verdict of murder in the second degree.

The court instructed the jury in Instruction No. 4: ". . . that if one person intentionally uses upon another a deadly weapon (that is, a weapon which, as used, is likely to produce death) at a vital part of the body, and in such a manner that death is likely to result, he is presumed by such use to have intended to kill, and if he so uses such weapon without just cause or provocation he is presumed to have acted with malice aforethought. Whether the said rock was a deadly weapon and whether such weapon was used in such a manner and with such intent by the defendant on the occasion under consideration, are matters to be determined by you from all the facts and circumstances in the case."

1220

The court further instructed the jury in Instruction No. 7: ". . . that the law presumed that a person intends the natural and probable consequences of his acts, and if you believe from the evidence in the case that the defendant Dill Taylor assaulted with a deadly weapon, a large rock, Mattie Keith, in a vital part of the body, the law presumes that defendant, Dill Taylor intended to kill Mattie Keith."

Such instructions are proper under the particular facts of this case and they correctly state the law. "It is universally held that everyone is presumed to intend the natural and probable consequences of his own intentional act. . . . It follows that where one uses a weapon likely to produce death in making an assault upon another, and death ensues, the one who commits the act is presumed to intend death." State v. Hart, 309 Mo. 77, 274 S. W. 385. Similar instructions were approved in State v. Dollarhide, 333 Mo. 1087, 63 S. W. (2d) 998; State v. Grant, 144 Mo. 56, 45 S. W. 1102; State v. Silk, 145 Mo. 240, 44 S. W. 764, 46 S. W. 959; State v. Graves, 352 Mo. 1102, 182 S. W. (2d) 46. And see Raymond on Instruction, sec. 5986, sec. 5990. The objections to an instruction which states that one who intentionally uses upon another at some vital spot a deadly weapon must be presumed to intend death noted in State v. Creighton, 330 Mo. 1176, 52 S. W. (2d) 556, are not apposite here because of the difference in the facts. In that case the defendant did not deny the shooting. In this case the defendant does deny striking deceased with the rock. In that case defendant did not claim the shooting was unintentional, but that it was intentional relying on just or lawful provocation and self-defense. In this case there is no such defense, merely a flat denial by defendant that he had any altercation of any kind with deceased.

We hold under the facts of this case the court may properly instruct that defendant is presumed to intend the natural consequences of his voluntary act without invading the province of the jury. See 23 C. J. S., Criminal Law, sec. 1183. And the court may properly instruct as to the presumptions arising from the facts on the issue of intent. See 23 C. J. S., Criminal Law, sec. 1222.

 This court has held a rock may come under the term deadly weapon when used in a manner which is likely to produce death. State v. Vinso, 171 Mo. 576, 71 S. W. 1034; State v. Miller, 264 Mo. 395, 175 S. W. 187. And this question was properly left to the determination of the jury. For a discussion about what constitutes a deadly weapon see State v. Henderson, 356 Mo. 1072, 204 S. W. (2d) 774, recently decided.

 The jury was required to find by the main instruction that the defendant struck deceased with a rock causing death or else to acquit the accused. Such an inference could be plainly and fairly deduced from the facts proved.

There is no basis for the charge that the instructions 4 and 7 permit a presumption upon a presumption. A conviction cannot stand on a presumption based on a presumption. State v. Simon (Mo.), 57 S. W. (2d) 1062. .

The court refused accused's offered instructions on motive. Motive is not an element of crime and proof of it is not essential to sustain a conviction. State v. Logan, 344 Mo. 351, 126 S. W. (2d) 256; 22 C. J. S., Criminal Law, sec. 31. Accordingly an instruction on motive is not required. Proof of motive does have great probative force in determining guilt, especially in cases of circumstantial evidence. But since motive is merely a circumstance to be considered by the jury and not conclusive of accused's innocence or guilt, it need not be singled out by a special instruction. The court's action in refusing to instruct on motive was not error. State v. Logan, supra; State v. Koch, 322 Mo. 106, 16 S. W. (2d) 205.

Nor did the court err in refusing a converse instruction covering the case offered by defendant. Ordinarily a defendant is entitled to have submitted to the jury a correct instruction submitting the converse of the state's main instruction, and it has been held to be prejudicial error to refuse such an instruction when offered. State v. Quinn, 344 Mo. 1072, 130 S. W. (2d) 511. But if the given instructions fully cover the same subject matter contained in the defendant's offered instruction, as they do in this case, it is not error to refuse such an instruction. State v. Fraley, 342 Mo. 442, 116 S. W. (2d) 17.

Accused's complaint that the sheriff was not sworn to summon jurors who were qualified to serve, as required by Section 701, R. S. 1939, Mo. R. S. A., before summoning some additional jurors to complete the panel, comes too late when raised for the first time in his motion for new trial.

The fact that the sheriff and deputy sheriff had not been administered the required oath, if such was true, was ascertainable by accused before the trial commenced. Therefore, such objection to the sheriff or his deputy in connection with summoning prospective jurors should have been made before the trial commenced. It is too late to make it in the motion for new trial. State v. Rouner, 333 Mo. 1236, 64 S. W. (2d) 916. It is no ground for objection that the record is silent as to the sheriff's taking the oath before summoning the jury. State v. Hart, 66 Mo. 208; State v. Clifton, 73 Mo. 430.

Accused also complains that no women were summoned to serve on the jury and that the prospective jurors were men only.

Section 22 (b) of Article I of the Constitution of 1945 now for the first time in this State makes women eligible for jury service. To conform to this change, Section 697, R. S. 1939, Mo. R. S. A. was amended by eliminating its application to "male", citizens only. Laws 1945, p. 1065. It now reads: "Every juror, grand and petit, shall be a citizen of the state, resident of the county, sober and intelligent, of

1222

good reputation, over twenty-one years of age and otherwise quali-
fied.''

There is no mandatory provision requiring women to be called on
every panel either in the statutes or in the constitution. The constitu-
tion even grants a woman the option to be exempted from serving on
a jury if she chooses.

An ''impartial jury of the county'' is the constitutional right ex-
pressly granted an accused in a criminal prosecution. See 18 (a)
Article I, Constitution Missouri, 1945. After 125 years of calling only
male citizens as jurors in this state we do not believe the fact no woman
was called as a prospective juror of itself makes a jury 'partial and
unfair to an accused.

There is nothing in the constitution or statutes which requires an
accused, man or woman, to be tried by a jury composed of both men
and women, or now of men only, or of women only, or of any definite
proportion of the two sexes. While an accused has the right to a
jury fairly selected, still his right is not to pick out the jury, but to
reject any who are unqualified or prejudiced. He is only guaranteed
an impartial jury, fairly selected. We can not say the jury in this
case was unfairly selected merely because women may not have been
included among those summoned as prospective jurors. If such was
the fact the accused was in nowise prejudiced and his constitutional
rights to due process and equal protection of the laws were not in-
fringed. In this connection see: People v. Shannon, 203 Cal. 139, 263
P. 522;.People v. Parman, 14 Cal. (2d) 17, 92 P. (2d) 387; Common-
wealth v. Duca, 312 Pa. 101, 165 A. 825; State v. Dreher, 166 La.
924, 118 So. 85; In re Housing Authority of City of Newark, 126 N.
J. Law 60, 17 A. (2d) 812; 50 C. J. S., Juries, sec. 124.

In exercising its supervisory power over the administration of jus-
tice in the federal 'courts the Supreme Court of the United States
condemned ''the purposeful and systematic exclusion of women'' by
those in charge of calling jurors for the federal district courts and
held where this was an admitted fact it was unnecessary to show
prejudice in an individual case. Ballard v. United States, 329 U. S.
187. But in Fay v. People of State of New York, 67 S. Ct. 1613 the
court stated the Ballard case dealt only with juries in federal courts
over which that court had greater freedom to reflect their notions
than it has over proceedings in state courts. And so far as state
courts are concerned the Fay case appears to hold that purposeful
exclusions from jury lists, except those based on race or color, are
not unconstitutional unless they are such as to deny a fair trial.

In this case the accused does not even claim his rights were actually
prejudiced or that he was subjected the unjust discrimination. Nor
does he claim that there was a ''purposeful and systematic exclusion
of women'' from the list of prospective jurors, nor does the record
show that such was an admitted fact.

█ . The accused filed affidavits of two persons to support his contention about newly discovered evidence. After a hearing the court refused to grant the accused a new trial on this ground. The trial court has wide discretion in passing on such contention, and in this case the discretion was not abused. One of the persons whose affidavit was filed had been called by the accused as a witness but was not used. The other was the embalmer and undertaker who took charge of deceased's body. He stated he made a full disclosure of his knowledge of the case to one of accused's lawyers long before the trial.

It is apparent that accused either knew the facts he now claims constitutes █ newly discovered evidence or by the exercise of any diligence whatever he could have ascertained such facts before trial and produced evidence of them at the trial. No excuse for failing to do so is offered. "A new trial will not be granted for newly discovered evidence in the absence of a showing of due diligence by accused to ascertain and produce such evidence at his trial or unless a sufficient excuse for the lack of diligence is shown." 23 C. J. S., Criminal Law, sec. 1455. See State v. Sherry (Mo.), 64 S. W. (2d) 238.

Other contentions are either not supported by the record or not properly preserved for review so will not be discussed.

From the record it appears that accused had a fair trial, and on the state's evidence which was believed by the jury his guilt was clearly established.

Judgment *affirmed*. All concur.