**STATE of Missouri, Respondent,**

**v.**

**Verne Arthur SMITH, Appellant.**

No. 53326.

Supreme Court of Missouri,
Division No. 2.

April 12, 1971.

Motion for Rehearing or Transfer to Court
En Banc Denied May 10, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Granville E. Collins, T. E. Lauer, Columbia, for appellant.

MORGAN, Judge.

The jury returned a verdict of guilty of murder in the first degree and sentenced defendant to life imprisonment. He has appealed.

Defendant, a 26-year old (graduate student) instructor in history at the University of Missouri, was charged with the killing of a student on October 18, 1965. Upon arraignment, he entered a plea of not guilty in reliance on the defense "that as a result of mental disease or defect he did not appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law." On the same day, Decem-

ber 2, 1965, the trial court ordered that defendant be placed in custody and control of the Superintendent of State Hospital No. 1 at Fulton for psychiatric examination. Reports filed later reflected a diagnosis of Schizophrenic Reaction, Chronic Paranoid Type, with the conclusion "that he remains psychotic and should be considered as not responsible for the crime with which he is charged because of his mental illness." However, it was concluded that defendant had the capacity to understand the proceedings against him and assist counsel in defense of the charge. Chapter 552, V.A.M.S. After a formal hearing on February 1, 1967, the trial court found defendant "competent to proceed," but ordered him returned to custody in State Hospital No. 1. At the moment, we are not concerned with disposition of other pre-trial motions.

The trial began on April 18, 1967. One hundred one persons were present as prospective jurors—thirty regular veniremen and seventy-one talesmen selected by the sheriff of the county. All were men. Voir dire followed.

Prior to the making of peremptory challenges, defendant moved to quash the jury panel on the ground that women had been purposefully and systematically excluded. After a tendered offer of proof, the motion was overruled. Subsequently, in connection with the hearing on defendant's motion for a new trial, the trial court received evidence on the issues raised by the motion to quash. The motion was overruled and sentencing followed. It is alleged that the trial court committed error in so doing. We first will consider this contention.

Fundamentally, a defendant in a criminal prosecution has a right to a jury selected from a representative cross-section of those persons in the community who are eligible for jury service. This does not mean that a particular jury panel must contain persons from every legally cognizable group; but, it does mean that there can be no deliberate exclusion of any legally qualified group. Women, as

such, constitute an identifiable group and are eligible to serve as jurors in this state. Article 1, Section 22(b), 1945 Missouri Constitution, V.A.M.S., provides: "No citizen shall be disqualified for jury service because of sex, but the court shall excuse any woman who requests exemption therefrom before being sworn as a juror." See Sections 494.010, 494.031, V.A.M.S. This constitutional provision expressly prohibits disqualification on the basis of sex; and, to comply with this mandate, those persons charged with the selection of a jury panel must not give consideration to the sex of one otherwise qualified. A possible claim of the exemption authorized is solely that of the prospective juror. Additionally, the purposeful elimination of persons of a particular class does violence to the basic concept that veniremen are to represent a cross-section of the community. Such has long been the law of this state. State v. Logan, 341 Mo. 1164, 111 S.W.2d 110; State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949, 952; State v. Brownridge, Mo., 353 S.W.2d 715, 717; State v. Amerison, Mo., 399 S.W.2d 53, 56. Other cases considering alleged exclusion of women are: State v. Taylor, 356 Mo. 1216, 205 S.W.2d 734, 738; State v. Ready, Mo., 251 S.W.2d 680, 683; State v. Andrews, Mo., 371 S.W.2d 324, 327; Parker v. Wallace, Mo., 431 S.W.2d 136, 138; State v. Parker, Mo., 462 S.W.2d 737 and State v. Davis, Mo., 462 S.W.2d 798. It is also established that an obvious lack of a proportionate share of a class or even the absence of any member of a certain class on a particular panel is not alone sufficient to establish impropriety in its selection. " * * * [I]t is clear that systematic exclusion and percentage discrimination must be alleged and proved in order to impeach a jury panel on this ground." State v. Mooring, Mo., 445 S.W.2d 303, 305; State v. Dowe, Mo., 432 S.W.2d 272, 275; State v. Taggert, Mo., 443 S.W.2d 168, 170. Defendant submits that he made a prima facie case based on both a showing of intentional exclusion and continuing percentage discrimination, and that the burden of showing otherwise shifted to the state. See Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118, and Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599.

Defendant called the circuit clerk of the county who also acted as clerk of the jury commission. She stated that names of prospective jurors are taken from lists of voters in the county clerk's office, and that petit jury panels are selected from a pool of about 400 names, kept separately as to townships. A portion of her testimony is as follows:

"Q: * * * you have been clerk for the Jury Commissioners in this county for how many years?

A: Well, since 1957.

Q: * * * has there been any rule followed in setting aside the names of women when drawn because of their right under the law to ask to be excused in order to obtain a panel?

A: Well, not necessarily, however, we try not to get the panel loaded with women.

Q: By saying 'we try not to get the panel loaded,' you are indirectly saying we won't put their name in the pot, is that what you are saying?

A: Well, we try not to put too many in.

Q: Yes?

A: In making up the list.

* * * * * *

Q: * * * In other words, you do not follow a random selection then do you?

A: * * * sometimes women will run maybe ten or twelve names in a group before there is another man that is on the list.

Q: Uh-huh.

A: And we don't take all those ten women.

Q: In other words, you * * *?

A: We eliminate them.

Q: You select?

A: Well * * *

Q: Isn't that correct?

A: Well, if you want to call it selecting."

Further testimony indicated that after the list is made up there is generally no further discrimination, except when five or six women were drawn consecutively for a particular panel "maybe" some were put back. Of the original forty-eight chosen for the term during which defendant was tried, three were supposedly women. However, for some reason only thirty of this group were called and none were women.

The sheriff and one of his deputies were called as to the manner of selecting the seventy-one talesmen. Briefly, their testimony indicated that a pool of names was made up from persons who had served from "two years to ten years back," and the seventy-one were then drawn at random. Necessarily, these same persons had originally been on lists prepared by the jury commission over an eight year period; and the fact all drawn were men certainly tends to confirm that the selective process described had been practiced continuously for several years.

■ Defendant submits arguments, based on mathematical probabilities, that any drawing of one hundred one men and no women considered alone made a prima facie case of intentional discrimination. We need not decide this point nor extend this opinion by detailing all of the arguments against the "mathematical likelihood" a randon selection would create such a result. It is sufficient to say that we are convinced, from the record in this case, that the statistical possibilities shown combined with the testimony of those participating in the selection made a prima facie case, which shifted to the state the burden of showing that the venire had been drawn in compliance with the standards enunciated in most every case herein cited. There was no effort to do so, and we are compelled to rule that the panel was improperly selected.

■ Second, defendant alleges the court was in error by failing and refusing to instruct the jury on the issue of the voluntariness of pre-trial statements. With this we must agree. In State v. Washington, Mo., 399 S.W.2d 109, 114 [12], the procedure followed in this state was again reviewed. After detailing the manner of conducting the preliminary hearing and the finding to be made by the trial court, it was said: "Thereafter, the witnesses to the circumstances under which the confession was made testify before the jury. The jury then determines the probative value of the confession under the *instructions of the court* which direct the jury to disregard it entirely if the jury finds the confession was not voluntarily made. State v. Deyo, Mo., 387 S.W.2d 561, 564, 565 [5, 6]; State v. Howard, Mo., 383 S.W.2d 701, 702 [1]." (Emphasis added.) See also State v. Falbo, Mo., 333 S.W.2d 279, 286 [7, 8, 9].

Next, we are not only concerned but somewhat disturbed by the lack of a showing that the "increased" medication administered by the state, during trial, did not make questionable the trial court's earlier finding that defendant was competent to stand trial.

The record indicates that immediately after arraignment on December 2, 1965, the trial court ordered defendant placed in custody at a mental hospital; that he remained in the hospital for over a year and four months prior to and during the seven-day trial which began on April 18, 1967; that an attendant at the hospital brought defendant each morning for his appearance at trial and at the conclusion of each day returned him to the hospital; that the attendant had certain medications with him if needed by defendant. As noted,

something over two months prior to trial, the court properly held a preliminary hearing to determine defendant's fitness to proceed as called for by Section 552.020(2). A witness at that hearing was the superintendent of the state hospital, who described the medication being given defendant and expressed his opinion defendant was "fit to proceed." A portion of his testimony, relative to medication, was: "Some patients on heavy dosage complain that they are slowed down. They complain they cannot think as quickly and they do walk more slowly. Ordinarily, in the dosage that Mr. Smith [defendant] is on, we do not get much of that." Later, at the trial, testimony was offered that during the trial it had been necessary to "increase" defendant's medication. It is not known if the added medication affected defendant's ability to think, but we do note the request of the attorney for defendant, during trial, for leave to prove that defendant was "unable to communicate with him concerning the facts of the case." He also suggested that defendant be placed on the witness stand to demonstrate his inability to cooperate with counsel. The request and suggestion were denied without inquiry. Nevertheless, we need not resolve whether or not the ruling was error, but if on retrial, the state is still treating defendant with daily medications which could impair his capacity to understand the trial proceedings, we mention that: "Section 552.020 pertaining to mental disease or defect excluding fitness to proceed with trial does not require that the motion provided for be filed at any particular time, and § 552.010 provides that no person who lacks such capacity shall be tried, convicted or sentenced so long as the incapacity exists. This implies that the motion can be made anytime before sentencing." State v. Lowe, Mo., 442 S.W. 2d 525, 529 [3]. See also McCormick v. State, Mo., 463 S.W.2d 789 and State v. Stock, Mo., 463 S.W.2d 889.

■ Although the judgment must be reversed for the reasons indicated, we note two other points presented: (1) Since the sheriff was a principal witness for the state, we point out that on retrial caution should be taken to comply with the standards articulated in State v. Tyarks, Mo., 433 S.W.2d 568 (1968); (2) After hearing evidence on defendant's motion to suppress pre-trial statements, the docket entry indicates only that the motion was denied, and no mention was made of the issue of voluntariness. If a comparable motion is filed again, the trial court is cautioned to comply with the dictates of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593. See State v. Glenn, Mo. (En Banc), 429 S.W.2d 225, 237 [29].

It does not appear that other alleged errors concerning closing argument and other matters could arise again in the same posture as presented now and they need not be fully considered.

The judgment is reversed and the cause is remanded for a new trial.

All of the Judges concur.