## The Atchison, Topeka & Santa Fé Railroad Company v. J. C. Davis.

RAILROAD COMPANY, *Operating Other Railroad*. Where a great railroad company, operating a long line of road in the state, projects, constructs controls and manages another railroad for the purpose of a local line, it will be liable for the negligence of the men operating the same.

### Error from Sedgwick District Court.

ACTION brought February 24, 1884, by *J. C. Davis* against *The Atchison, Topeka & Santa Fé Railroad Company*, to recover damages for personal injuries alleged to have been received in the city of Wichita, on December 26, 1883, by reason of a collision of a wagon in which plaintiff was and a train of cars alleged to have been operated by the employés and servants of the railroad company. The company answered, denying generally all the allegations in plaintiff's petition, and further alleged that plaintiff was guilty of contributory negligence. Trial at the June Term, 1884. The court, among other things, charged the jury as follows:

"It is incumbent upon the plaintiff to prove that the injury complained of was committed by the Atchison, Topeka & Santa Fé Railroad Company. It is claimed by the defendant

that the train by which the plaintiff was injured was operated by the Wichita & Western Railroad Company, and that the persons in charge of and managing the train were the servants and employés of the latter company, and not of the defendant. This question is one of fact, to be determined by you from all the evidence in the case. The burden is upon the plaintiff to establish the fact that the train was being operated by the Atchison, Topeka & Santa Fé Railroad Company at the time, and if the evidence is evenly balanced on the question, you should find for the defendant. If you find from the evidence that the accident to the plaintiff happened by a train of cars colliding with the wagon in which he was riding, at the crossing of Oak street, on the railroad track owned by the Wichita & Western Railroad Company, in the city of Wichita, and that the train was at the time under the control and management of men who were agents and servants of the Wichita & Western Railroad Company, and who were not in the employ or under the direction and control of the defendant company, then you must find for the defendant. The mere fact that the same men were officers of the defendant company, and also of the Wichita & Western Railroad Company, is not sufficient evidence to justify a finding that the two companies were one and the same; and if the evidence shows that the Wichita & Western Railroad Company was a corporation duly created and organized under the laws of the state of Kansas, and that the injuries to plaintiff were caused by the negligence of its servants in the management of its business, you cannot find the defendant company liable for such negligence. But the last instruction must be considered with this qualification: that what is true of individuals is also true of corporations, in this respect, that one may be the servant of the other, and the servants of the one may be under the control and direction of the other. In determining the liability of the defendant in this case for the acts of the men in charge of the train in question, the true test is, what company had the control and direction of the men in the operation of that train at the time? Was it the defendant, or some other company? And if it was not the defendant, it is immaterial, for the purposes of this case, who it was; the defendant would not be liable. But if the defendant in fact exercised the actual control of the men in the management and operation of that train, it would be liable for the negligence of the men in the operation of the train, notwithstanding the men were at the time the servants and engaged in the business of another com-

pany; and this fact, as I have said, must be determined upon the whole evidence in the case."

The defendant asked the court to instruct the jury as follows:

"1. I instruct you that under the evidence and the law in this case, the defendant is not liable, and you must find a verdict in its favor.

"2. I instruct you that the defendant, the Atchison, Topeka & Santa Fé Railroad Company, is in no manner responsible for the negligent acts, if any, of the servants, agents or employés of the Wichita & Western Railroad Company, who were not in the employ of the defendant, or under its management and control.

"3. I instruct you that the mere fact that the Atchison, Topeka & Santa Fé Railroad Company, by the purchase of the stock and bonds, or either, of the Wichita & Western Railroad Company, was aiding said railroad company in its construction, is not sufficient to render said Atchison, Topeka & Santa Fé Railroad Company liable to the plaintiff in this action.

"4. I instruct you that if you find from the evidence that the accident happened by a train of cars colliding with the wagon in which plaintiff was riding, at the Oak street crossing, in Wichita, on the tracks owned by the Wichita & Western Railroad Company, and that the said train was under the control and management of persons who were the agents and servants of the Wichita & Western Railroad Company and were not in the employ of the Atchison, Topeka & Santa Fé Railroad Company, then you must find for the defendant."

The court refused to give these instructions, to which refusal the company excepted. The jury returned a verdict for the plaintiff, and assessed his damages at the sum of $2,500, and also made the following special findings:

"1. Is it not a fact that the persons present, or having to do with the train which collided with plaintiff's wagon and caused the injury, were Charles Plank, the conductor, and George Beals, brakeman, and —— Richardson, who was running the engine? and if not, state fully the names of all other persons present, who in any manner had anything to do with the running of said trains. A. Yes.

"2. Is it not a fact that at the time of the accident result-

ing in plaintiff's injury, Charles Plank, the conductor of the train, Richardson, the person who was running the engine, and George Beals, the brakeman, were each of them in the employ of and on the pay-rolls of the Wichita & Western Railroad Company? A. They were on the pay-rolls of the Wichita & Western Railroad.

"3. Is it not a fact that the Wichita & Western Railroad Company is a corporation duly incorporated under the laws of the state of Kansas for the purpose of constructing, owning and operating a railroad from Wichita west? A. Don't know.

"4. Is it not a fact that neither conductor Plank, nor brakeman George Beals, nor —— Richardson, were, either of them, at the time of the accident resulting in plaintiff's injuries, agents or servants or in the employ of or under the control of the Atchison, Topeka & Santa Fé Railroad Company? A. No.

"5. If you answer the last question in the negative, state fully which of such persons were in the employ of the Atchison, Topeka & Santa Fé Railroad Company; state what positions they held, if any; what services they performed for said company, and what the duties of such employment for said Atchison, Topeka & Santa Fé Railroad Company consisted of. A. Charles Plank, conductor; George Beals, brakeman; Richardson, fireman. We find they were agents or servants or in the employ or under the control of the A. T. & S. F. Rld. Co.

"6. Is it not a fact that just prior to said accident, the plaintiff was driving eastward, on Oak street, in the city of Wichita, toward the railroad tracks situated near the union depot in Wichita? A. Yes.

"7. Is it not a fact that there was situated on the south side of Oak street, and about four or five rods from the west railroad track, a peach orchard, about three or four rods wide and four or five rods long? A. Yes.

"8. Is it not a fact that the peach orchard referred to in the last question was situated about sixty-four feet from the west rail of said railroad tracks? A. Yes.

"9. Is it not a fact that after the plaintiff passed said peach orchard there was nothing to obstruct his view of the main track, on which said engine and train of cars were approaching, which would prevent him from seeing said approaching engine and cars for a distance of several blocks, had he looked toward the south? A. Don't know.

"10. If you answer the last question in the negative, state

fully what such obstructions consisted of, and the height and location of the same. A. Don't know.

"11. Is it not a fact that the track on which the train was approaching from Oak street south to Douglas avenue, in the city of Wichita, was straight, or nearly so? A. Yes.

"12. State what there was, if anything, to prevent plaintiff from seeing said approaching train, had he looked to the south, after passing the corner of said peach orchard, anywhere between Oak street and the old railroad depot on Douglas avenue in said city, giving location and height of such obstruction. A. Don't know.

"13. Is it not a fact that the railroad track on which said train was passing at the time of said accident, belongs to the Wichita & Western Railroad Company? A. No.

"14. Was it not about 1 o'clock P. M., on a bright, clear day, when the alleged injury to plaintiff was done? A. No.

"15. Was not plaintiff at that time in the possession of full mental and physical powers, with his senses of sight and hearing unimpaired? A. Yes."

The railroad company filed its motion for judgment upon the special findings, which was overruled. Thereupon it filed its motion for a new trial, which was also overruled. Judgment was entered upon the verdict in favor of the plaintiff and against the railroad company for the sum of $2,500 and costs. *The Company* excepted to the rulings and judgment, and brings the case here.

*James Hagerman, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error; *Geo. W. McCrary,* general counsel,

*W. P. Campbell,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The railroad company—defendant below —challenged the array, and objected to the trial by the jury present upon the ground that it had not been selected and summoned in accordance with the provisions of the statute. (Comp. Laws of 1879, ch. 54, § 2.) The trial was had at the June term of court for 1884. The testimony introduced shows that the jury were drawn May 3d from the jury list selected in 1883 from the assessment rolls of 1882—the pre-

ceding year. In fact, the list for 1884 was not made up and put in the jury box until May 15, 1884, several days after the jury were drawn. Two names drawn and summoned on the jury were not returned as jurors for 1883, and the explanation given as to their names being in the box is the surmise that they were left in there prior to the making of the jury list for 1883. Upon these facts, the challenge to the array was properly overruled. At most, there was an irregularity attending the drawing of the jurors, but there was no purpose on the part of the officers to neglect or refuse to comply with the statute in the listing and selection of jurors for the June term of court. The court had ample power to purge the jury, without sustaining the challenge to the array. (*Dolan v. People*, 64 N. Y. 485.) This case is therefore different from the facts stated in *The State v. Jenkins*, 32 Kas. 477. Here, the officers attempted to comply with the statute and draw the jurors from the class or list prescribed, and all the jurors were so drawn, with the exception of two only. In *The State v. Jenkins*, the essential provisions of the statute were palpably disregarded.

It is next urged that there was no sufficient evidence to hold the railroad company liable for damages, and that the court erred in instructing the jury as follows:

"That what is true of individuals is also true of corporations, in this respect: That one may be the servant of the other, and the servants of the one may be under the control and direction of the other. In determining the liability of the defendant in this case for the acts of the men in charge of the train in question, the true test is, what company had the control and direction of the men in the operation of that train at the time? Was it the defendant, or some other company? If it was not the defendant, it is immaterial for the purposes of this case who it was; the defendant would not be liable. But if the defendant in fact exercised the actual control of the men in the management and operation of the train, it would be liable for the negligence of the men in the operation of the same, notwithstanding the men were at the time the servants and engaged in the business of another company."

The evidence showed that on December 26, 1883, while the plaintiff below was attempting to cross a railroad track operated by the A. T. & S. F. Rld. Co., at a street-crossing in the city of Wichita, with a two-horse farm wagon and team, he was run into by a locomotive and train of cars backing upon the track. This train was being used in constructing the Wichita & Western Railroad. The rear car of the construction train was loaded with telegraph poles, some of which extended beyond the rear end of the car several feet. The wagon of plaintiff below was struck by one of the timbers on the car, and he was knocked out and severely injured. The contention on the part of the railroad company is, that if any company is liable, the Wichita & Western Railroad Company is the only one liable for the injuries complained of.

The charter of the Wichita & Western Rld. Co. was introduced in evidence, from which it appeared that on May 17, 1883, the charter of that company was filed in the office of the secretary of state. The directors or trustees of the company appointed for the first year were: William B. Strong, president of the A. T. & S. F. Rld. Co.; A. E. Touzalin, then vice president of the A. T. & S. F. Rld. Co.; C. C. Wheeler, then general manager of the A. T. & S. F. Rld. Co.; A. A. Robinson, then assistant general superintendent and chief engineer of the A. T. & S. F. Rld. Co.; Edward Wilder, secretary and treasurer of the A. T. & S. F. Rld. Co.; George R. Peck, then general solicitor of the A. T. & S. F. Rld. Co.; and J. F. Goddard, traffic manager of the same road. The parties who subscribed the charter were: A. A. Hurd, assistant attorney of the A. T. & S. F. Rld. Co.; Robert Dunlap, an attorney of the A. T. & S. F. Rld. Co.; E. Wilder, secretary and treasurer of the A. T. & S. F. Rld. Co.; George R. Peck, then general solicitor of the A. T. & S. F. Rld. Co.; and one W. W. Allen. Before this charter was filed, however, at a meeting of the directors of the A. T. & S. Rld. Co. held in Boston, Mass., on May 15, 1883, the following proceedings were had regarding the construction of a railroad from Wichita

to Kingman, subsequently known as the Wichita & Western Rld. Co.:

"On motion of Mr. Cheney, seconded by Mr. Pierce: Voted, that the president is authorized to take the necessary steps for occupying the country west of Wichita, by the purchase of the right-of-way, and construction of a grade west for about forty miles, at a cost not to exceed $65,000.

"The question of the further construction of this line to be postponed until some future day; the construction to be done by the Atchison company alone, or by the Atchison and St. Louis & San Francisco, as may be found to be in accordance with our treaties with said San Francisco company."

On August 7, 1883, at another meeting of the board of directors of the A. T. & S. F. Rld. Co. held at Boston, Mass., the following proceedings were had:

"On motion of Mr. Burr, seconded by Mr. Pierce: Voted, that the president is authorized to take the necessary steps to complete the construction of the road called the Wichita & Western, from Wichita to the town of Kingman, about forty-three miles distant — the road to be built to serve the purpose of a local line, and with old iron.

"The question of the ownership of the property by the Atchison company alone, or by the Atchison, St. Louis & San Francisco conjointly, is to be arranged hereafter as may be found to be in accordance with our treaties with said San Francisco company."

On January 2, 1884, at a meeting of the board of directors of the A. T. & S. F. Rld. Co., it was—

"Voted, that the president, vice president and Mr. Thomas Nickerson be a committee to consider and recommend to the board what course to pursue with regard to any claim on the part of the St. Louis & San Francisco Railway Company of a joint interest in the line from Wichita west, with authority to employ counsel."

In addition to these resolutions, evidence was also offered on the part of the plaintiff below, tending to show that the Wichita & Western Rld. Co. was a mere servant or agent of the A. T. & S. F. Rld. Co.; that the latter company had the control and direction of the men operating the train which

struck the wagon; that the track upon which the collision occurred had been used and operated by the A. T. & S. F. Rld. Co. for many years, and was generally known as that of the A. T. & S. F. Rld. Co.; that the engine and cars used in the construction of the Wichita & Western Railroad belonged to the A. T. & S. F. Rld. Co.; that the pay-checks and pay-rolls of the employés engaged in the construction of the Wichita & Western Railroad were indorsed and countersigned by the general officials of the A. T. & S. F. Rld. Co.; and that the A. T. & S. F. Rld. Co. operated the Wichita & Western Railroad after it was completed.

There was some evidence offered explanatory of all this, tending to show that the construction train was leased to the Wichita & Western road by the A. T. & S. F. Rld. Co.; that the individuals connected with the A. T. & S. F. Rld. Co. who were officers of and interested in the construction of the Wichita & Western Railroad, were engaged by that company and acting in its behalf. It is quite clear, however, from the resolutions of the board of directors of the A. T. & S. F. Rld. Co., that the Wichita & Western Railroad was constructed by that company; that it was owned by that company; and that in January, 1884, the A. T. & S. F. Rld. Co. was resisting the claim of the St. Louis & San Francisco Railway Co. to a joint interest therein.

This is not a case showing that the A. T. & S. F. Rld. Co. is merely a stockholder in the Wichita & Western Railroad, but the evidence conduced to show that the A. T. & S. F. Rld. Co., being a great railroad company operating a long line of road in this state, projected and constructed the Wichita & Western Railroad, and controls and manages the same for the purpose of a local line. We think, therefore, that there was sufficient evidence to sustain the instructions of the court and justify the verdict and judgment. The trial judge was careful in his instructions to conform to the ruling of this court in *Railway Co. v. Ritz*, 30 Kas. 31, and said to the jury that "the mere fact that the same men were officers of the A. T. & S.

*Railroad company, operating another railroad for local line; liability for negligence.*

F. Rld. Co. and also of the Wichita & Western Railroad Co. was not sufficient evidence to justify a finding that the two companies were one and the same."

The special findings of the jury are criticised as evasive and untrue. We find that three or four of these were simply answered by the jury, "Don't know." Of course, answers to questions should be direct and positive, and therefore there was an irregularity in the answers. No application was made, however, to the court for the jury to correct their answers; and in view of the resolutions of the board of directors of the A. T. & S. F. Rld. Co. concerning the construction of a road from Wichita to Kingman, with old iron, to serve the purpose of a local line to be owned by that company, we cannot say that the latter company was likely to be injured or prejudiced by any answer touching the purpose of the incorporation of the Wichita & Western Railroad Company. Neither do we consider the other defective answers sufficiently material to set aside the verdict or reverse the judgment. A reading of the record does not convince us that any answer is wholly untrue.

"This court will uphold the general verdict, unless the facts as obviously disclosed by the answers to the special questions are inconsistent therewith and compel a different judgment, or unless the answers are so directly and plainly contradictory as to show that the jury gave no intelligent attention to either the testimony or questions, or unless some special facts appear to show that there has been a mistrial or a failure of justice." (*Railway Co. v. Holley*, 30 Kas. 465.)

The judgment of the district court will be affirmed.

All the Justices concurring.