# Commonwealth *v.* Garletts, Appellant (No. 2).

*Jury—Women—Indictments—Motion to quash.*

The fact that the jury wheel contained only the names of male electors is no reason for quashing an indictment.

Where the courthouse accommodations were inadequate and there was a real doubt in the minds of judges and jury commissioners as to whether women were eligible as jurors, no error was committed in not requiring them to undertake the responsibility of jury duty.

In the trial of an indictment charging extortion, the defendant, a male citizen of the United States, was not prejudiced or deprived of the constitutional right when tried by a jury consisting entirely of male citizens.

272 COMMONWEALTH v. GARLETTS, Appel. (No. 2).

*Grand jurys—Presence of assistant district attorney during session—Remarks—Objection—Discretion of court.*

The remarks of an assistant district attorney who was present during the session of the grand jury and who assisted in the examination of witnesses, will not be considered as a reason for quashing an indictment, when the trial judge was satisfied that the objectionable remark had not been made.

Argued April 17, 1923. Appeal, No. 107, April T., 1923, by defendant, from judgment of Q. S. Fayette County, June Sessions, 1921, No. 184, on a verdict of guilty in the case of Commonwealth of Pennsylvania v. C. C. Garletts. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Indictment for extortion. Before REPPERT, J.
Motion to quash the indictment.
The opinion of the Superior Court states the case.
The court refused to quash the indictment.

*Error assigned,* among others, was the order of the court.

*H. S. Dumbauld,* and with him *S. Ray Shelby,* for appellant, cited: Strauder v. West Virginia, 100 U. S. 303, and Neal v. Delaware, 103 U. S. 370; Carter v. Texas, 177 U. S., page 442; Whitney v. State, 59 South Western 895.

*H. Eastman Hackney,* and with him *Thomas H. Hudson* and *D. W. Henderson,* 1st Asst. Dist. Attorney, for appellee.

OPINION BY PORTER, J., July 12, 1923:
The defendant, a justice of the peace, was convicted in the court below upon an indictment charging extortion. The only ruling of the court below, upon the trial, assigned for error, is the refusal to quash the indictment. The principal reason urged in the motion to quash was that: "The grand jury which found and returned the

said indictment to the court was not a legal grand jury, in that it was drawn from a wheel which contained only the names of male electors of Fayette County, and from which all female electors of said county were excluded."

The defendant, in support of his motion to quash called the jury commissioners as witnesses and offered other evidence as to the manner in which the jury wheel had been filled and the Commonwealth produced testimony as to conditions existing in and about the court-house at the time. The evidence disclosed that the names of no women electors had been placed in the wheel. The president judge and jury commissioners had, on January 1, 1921, met at the courthouse and proceeded to select alternately 1800 electors to serve as jurors in the several courts of the said county during the year, that being the number designated by the court of common pleas at the next preceding term, as required by the Act of April 10, 1867, P. L. 62. They selected and placed in the wheel only the names of male electors. The president judge and the jury commissioners were in doubt as to whether women were eligible as jurors and further, there was an entire absence of suitable accommodations for women jurors. There was no waiting-room for the women and the accommodations for toilets was entirely inadequate. There were no separate rooms for women jurors, nor were there separate rooms to which women could retire when actually serving upon juries. There was only one toilet to be used in common by three jury rooms, in which juries were deliberating. There were no beds in any of the rooms and the men slept on cots. The conditions were such that when a jury was required to deliberate for days and nights, the women members thereof could not have any privacy whatever when nature demanded that all the members of the jury should be permitted to sleep, unless, indeed, they were absolutely separated in a manner which the law did not permit. The evidence fully warranted the finding by the court below, in its opinion overruling the motion to

quash, that a reasonable regard for propriety and decency suggested that the women be not required to endure the hardships and the offensive and objectionable experiences to which jury duty would subject them.

The Act of 1867 provided that the president judge or additional law judge of the several districts and the jury commissioners shall select "alternately, from the whole qualified electors of the respective county, at large, a number, such as at the term of the court of common pleas next preceding shall, by the said court, be designated, of sober, intelligent and judicious persons, to serve as jurors." There is in this case no suggestion that the names placed in the wheel were not those of electors duly qualified. The complaint is that other electors duly qualified were not also selected. Women became entitled to vote through the adoption of the Nineteenth Amendment to the Constitution of the United States in August, 1920. There was, however, a bona fide difference of opinion, even among judges, as to whether the effect of the amendment was to render women competent as jurors, under the provisions of the Act of 1867. This was the condition when the jury wheel was filled from which the names of the grand jury which found this bill were drawn. It was subsequently decided by the Supreme Court that the constitutional amendment having rendered women qualified electors, they thus became qualified to serve as jurors, under the provisions of the Act of 1867; Commonwealth v. Maxwell, 271 Pa. 378. The Act of 1867 does not require that the names of all qualified electors shall be placed in the jury wheel. The duty of selecting jurors to serve in a populous county like Fayette is no light one. The names to be placed in the wheel are those of "sober, intelligent and judicious persons." "To eliminate the aged, decrepit, ignorant, intemperate, and those who did not understand the English language, and then select from the large number of competent persons remaining, 1,200, could only be done by careful inquiry, thought and preparation before-

hand": Klemmer v. Railroad, 163 Pa. 529. The primary object of the Act of 1867, in taking from the sheriff and county commissioners the duty of filling the jury wheel, and providing for the election of jury commissioners who, with the president judge or additional law judge, should perform that duty, was to guard against unjust political prejudices in the selection of jurors. The judge and the jury commissioners are charged with the duty to select. If it appears that in discharging that duty they are influenced by partiality for any faction, race or class, the duty of the court in such a case is clear. When there is an entire absence of anything indicating a desire to do other than their full duty and the jurors selected possess the qualifications by the statute required, and their proceedings have been in accordance with the provisions of the act, it may become necessary to inquire whether their selection, made in good faith, has involved a deprivation of the legal rights of a defendant charged with crime. "Whenever by any action of a state, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the law is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States": Carter v. Texas, 177 U. S. 442. In that case there was bias against the race as a race, which excluded from the jury wheel all members of that race even though many of them possessed all the qualifications required for service as jurors. In the case with which we are now dealing it clearly appeared that there was in the minds of those making the selection an honest doubt as to whether women were, under the statute, qualified to serve as jurors. The question was one with regard to which the courts differed, and that doubt was not definitely settled until the subsequent decision of the Supreme Court. We cannot, in these circumstances, say

that the court below erred in holding that the selection of jurors was not to any extent influenced by bias or partiality. It was said, in Klemmer v. Railroad, supra, that the officers in making the selection of jurors should eliminate the "aged and decrepit"; this evidently upon the ground that it would be a hardship upon such persons to require them to serve. It would, therefore, seem to be reasonable to hold that women ought not to have been required to serve immediately after their enfranchisement, during the period of time necessary for the preparation of such quarters as to permit of their serving without undue hardship. But in addition to these considerations this appellant is a man; the electors whose names were placed in the jury wheel were all members of his sex. He was not aggrieved by the fact that the members of the other sex were not included among the electors whose names were placed in the jury wheel. The action of the officers who filled the jury wheel with the names of members of the sex of the appellant did not deprive him of the equal protection of the laws, guaranteed by the Fourteenth Amendment of the Constitution of the United States. The right guaranteed by that constitutional provision only inures to the benefit of a defendant who is a member of the race or class discriminated against, the race or class which is denied the equal protection of the law. It has been held that a man has no standing to complain that his constitutional rights have been violated when women were improperly deprived of their right to serve as jurors: McKinney v. State, 3 Wyoming 719, which decision was followed and approved by the Court of Errors and Appeals of New Jersey; State v. James, 114 Atlantic 553. It was held in Kentucky in Commonwealth v. Wright, 79 Kentucky 22, that a white man indicted by a grand jury composed wholly of persons of the white race, had no standing to complain that he was deprived of a constitutional right upon the ground of the exclusion of negroes from service on grand and traverse juries. We are of opinion that the

271, (1923).]        Opinion of the Court.
court did not err in refusing to quash the indictment upon this ground.

The second reason included in the motion to quash was based upon the ground that Henry Eastman Hackney, Esq., was present during the session of the grand jury, assisted in the examination of witnesses, and then and there made a remark to Charles Phillips, a witness, tending to prejudice the interests of the defendant. Mr. Hackney had been appointed an assistant to the district attorney, under the provisions of the Act of April 18, 1919, P. L. 83. "The mere fact of the presence of this stenographer at the hearing before the grand jury was not ground for quashing the indictment": Commonwealth v. Hegedus, 44 Pa. Superior Ct. 157. The allegation that Mr. Hackney made an improper remark to the witness was subsequently denied by Mr. Hackney under oath. The court in its opinion states that Mr. Hackney is a member of the bar, enjoys the respect and confidence of his fellow attorneys and of the court. The judge of the court below believed him, and we find no warrant for reaching a different conclusion. The assignments of error are all overruled.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.