No. 37,797

State of Kansas, *Appellee,* v. George Neff, *Appellant.*

(218 P. 2d 248)

Opinion filed May 6, 1950.

*H. W. Goodwin,* of Wichita, argued the cause, and *John A. Potucek,* of Wellington, was with on the briefs for the appellant.

*Ford Harbaugh,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *C. Harold Hughes,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a conviction of murder in the first degree.

The appeal is from a judgment rendered on the third trial of the same case, the first two prosecutions having resulted in mistrials. The appellant, George Neff, was charged in two separate counts of the same information with the murder of his wife, Jessie Neff, on November 17, 1947, by means of poisoning, and with the murder of Kenneth Wynn by means of a shot from a rifle approximately one month later, December 16, 1947. This trial resulted in a verdict of guilty on the count charging him with the murder of Wynn and a hung jury on the other count.

Kenneth Wynn was appellant's·brother-in-law, the appellant and Wynn having married sisters. After two previous oral confessions the appellant on January 10, 1948, signed a single written confession in which he admitted having committed both murders. In this third trial appellant admitted he voluntarily signed the confession but in his oral testimony on the witness stand attempted to repudiate the truth of his confession and various statements therein contained.

Appellant lists twenty-five specifications of error and argues fourteen under separate headings. The latter will be treated and the others regarded as abandoned.

Appellant's first contention is the information should have been quashed in response to his motion which alleged duplicity and the joinder of unrelated offenses not arising out of the same transaction. His next complaint is the court, after the state rested its case in chief, should have sustained his motion to require the state to elect on which count it would rely for conviction. The latter motion was on the ground the state's evidence showed the alleged offenses were unrelated and that a trial on both counts would result in appellant's prejudice.

Appellant argues the two motions together. Before considering the question whether the offenses were related we pause to state that part of appellant's motion to quash the information on the ground it was duplicitous was not good as no two offenses were

charged in any single count of the information. Even if from an examination of the counts on their face it appears unlikely a joinder cannot be sustained it is not error for the court to deny a motion to quash on the ground the offenses are unrelated. A court may wait until the testimony discloses the relationship or want of relationship between the two offenses before ruling on that question. (*State v. Hodges*, 45 Kan. 389, 26 Pac. 676; *State v. Thompson*, 139 Kan. 59, 60, 29 P. 2d 1101.)

But what about the merit of appellant's motion to require the state to elect after the state's case in chief was concluded? The state's theory of joinder was that both murders were part of one comprehensive plan, purpose, scheme and design on the part of the appellant to eliminate his wife and Kenneth Wynn in order that he might be with Olevia Wynn as much as possible without interference.

Appellant's confession introduced in the state's case in chief in part disclosed: He and Olevia Wynn had carried on a clandestine sexual relationship for a period of over twenty years with an average of such relations about every ten days; appellant and his wife had been on very unfriendly terms for many years and it gave appellant "the blues" and he got "despondent over it"; he said he determined he would not be happy until she was dead; he had placed the strychnine in the capsule she took, thinking it was medicine, for the purpose of killing her; he had always cared more for Olevia Wynn than for his own wife.

In this third trial it was admitted Mrs. Neff met her death by means of strychnine poisoning although it previously had been contended she had died from tetanus.

In the voluntary confession signed by appellant he was asked and answered as follows:

"Q. And did you arrive at the stage where you apparently had more affection for Mrs. Wynn than for your wife because of this relation? A. I always had.

"Q. Did you keep company with Olivia before her marriage with Kenneth or not? A. Yes, we had one date.

"Q. Was it because of this affection for this Mrs. Kenneth Wynn that caused you to be very resentful when you found that she was away from home and away from you? A. That's correct."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. You had a very strong affection for Mrs. Wynn, is that correct? A. Yes.

"Q. You did feel resentful with her being away with some one other than you, even with her husband? A. That's correct.

"Q. You had a strong desire to be with her as much as you could, is that correct, George? A. That's right. ·

"Q. You still, at this time have a strong affection for Mrs. Wynn? A. Same as ever."

In the same confession appellant narrated the fact he had gone to the farm home of Olevia Wynn the morning of the day he later shot Kenneth Wynn with Wynn's own rifle; that he removed the rifle from Wynn's home that morning. Here again his confession disclosed his deep resentment by reason of the fact Olevia was away that morning in the company of her own husband. It was that night he shot Wynn in the head with Wynn's rifle while the latter. was milking in the cow shed. He threw the rifle into the shed through the window from which he had shot Wynn.

In the foregoing statements we have cautiously omitted all reference to testimony developed after the state's case in chief which was indicative of the degree of estrangement existing between appellant and his wife, as disclosed by his wife the night of her tragic death when she said to appellant, "Get out of this room, George; get out of here."

We have no doubt the state's case in chief disclosed evidence and reasonable inferences from which the court properly could conclude both offenses were related and inspired by the same thought; that they were the product of the same identical motive, the same purpose; that appellant believed such purpose and objective could not be realized by the commission of one offense but that both were necessary.

Furthermore the state's direct evidence consisted of a single written confession. The state could not prove one offense without proving a confession of the other. Where offenses constitute one comprehensive plan, transaction, or one offense is a corollary to the other they may be joined and this is true whether they be of the same general character or not. (*State v. Odle*, 121 Kan. 284, 246 Pac. 1003; *State v. Thompson*, supra; *State v. Eason*, 163 Kan. 763, 186 P. 2d 269; 1 Wharton's Criminal Procedure, 10th ed., § 343, p. 393-394.)

While some general guides may be prescribed it is unwise to attempt to lay down a hard and fast, or comprehensive rule, governing the joinder of all possible offenses. In harmony with such modern view this and many other courts now prefer to determine the question of proper joinder on the peculiar facts of each case as it

arises. (*State v. Thompson*, supra, p. 62.) Ordinarily the question of proper joinder of offenses rests in the exercise of sound judicial discretion. (*State v. Hodges*, supra; *State v. Thompson*, supra; 42 C. J. S., Indictments and Informations, §§ 183, 189; 27 Am. Jur., Indictments and Informations, § 134.) Absent a clear showing of abuse of such discretion appellate courts do not reverse for failure to require an election. Under the circumstances narrated the trial court did not abuse its discretion.

Appellant, however, also overlooks our 1935 legislative enactment relied on by the state, G. S. 1935, 62-1449. Had the state filed separate informations on these offenses and introduced the confession, evidence covering both offenses, in the first trial a later prosecution on the other count not included in the information of the first case tried would have been barred by virtue of that statute. (*State v. Momb*, 154 Kan. 435, 119 P. 2d 544; *Claflin v. State*, 154 Kan. 452, 119 P. 2d 540.) The state was not compelled to pursue a course which precluded a trial of both offenses. Separate instructions were given covering each count. Separate verdicts were submitted thereon to the jury. The jury rendered a separate verdict of guilty, as previously indicated. The complaint of misjoinder cannot be sustained.

Appellant argues the court erred in refusing to permit his counsel to examine Olevia Wynn, the complaining witness, whom appellant had subpoenaed as his own witness in the instant case and attempted to interrogate her with respect to her sexual relations with other men than Neff. At that time a charge was pending against the witness for adultery. Her attorney objected to the inquiry on the ground her answers might incriminate her. Appellant's counsel argue the rule does not apply to a complaining witness but without citation of authority. The objection of her counsel was sustained and we think properly on the ground she was not compelled to incriminate herself.

Appellant next argues the court erred in refusing his request to introduce a portion of Olevia Wynn's testimony at the second trial of this case. Olevia Wynn had been a witness for the state in the second trial. Under pressure of cross-examination by appellant's counsel in that case Olevia Wynn finally admitted sexual relations with other men than appellant. After the court sustained the previously mentioned objection in the instant third trial counsel for appellant sought to have the testimony of Olevia Wynn on cross-examination in the second trial introduced in evidence. An objec-

tion ·by her counsel was sustained and appellant argues the ruling was erroneous, citing *State v. Stewart*, 85 Kan. 404, 116 Pac. 489; *State v. Reidie*, 142 Kan. 290, 46 P. 2d 601. In both of those cases it was conceded the testimony of the witnesses at a preceding hearing was *voluntarily given*. We shall not labor the question whether the same rule applies where testimony at a previous hearing was elicited under pressure of cross-examination. We prefer to rule the point on its merits rather than dispose of it on what might be regarded as a technicality. We therefore turn directly to the controlling question whether the record testimony of Olevia Wynn at the former trial was· competent for the purpose appellant sought to introduce it in this trial. For that purpose we shall assume, without deciding, that the testimony could not have been excluded on the ground of incrimination.

It was appellant's contention evidence of Olevia Wynn's sexual relations with other men than appellant was competent for the reason such other men would have the same motive for committing the crimes attributed to appellant. Of course, such evidence had no relationship whatever to the murder of appellant's wife. Was it competent to show other men, third parties, had the *same motive* to kill Kenneth Wynn as appellant had? Appellant cites no authority supporting its competency for that purpose.

There was no evidence such other men possessed the same or a similar devotion to Olevia Wynn as did the appellant. This was not a circumstantial evidence case but one founded on direct testimony, a confession. There was not the slightest testimony or the remotest inference such other men, wholly unidentified, had any possible connection with the murder of Kenneth Wynn. Under such circumstances the only effect the excluded testimony could have had would have been to confuse the jury, to permit it to indulge in speculations on collateral matters wholly devoid of probative value relative to who committed the murder and to divert their attention from the main issue they were sworn to try.

There is a general rule supported by numerous decisions that evidence of the motive of one other than the defendant to commit the crime will be excluded where there is no other proof in the case which tends to connect such other person with the offense with which the defendant is charged. See anno. on this subject in 121 A. L. R. 1362; 20 Am. Jur., Evidence, § 265; *State v. Smith*, 35 Kan. 618, 11 Pac. 908; *State v. Scott*, 117 Kan. 303, 315, 235 Pac. 380. In view of this

established principle we need not pursue appellee's contention appellant failed to make a valid proffer of the evidence adduced at the former trial.

Appellant states it was error to permit certain rebuttal testimony of the state contending it should have been introduced in the state's case in chief. It is emphasized such evidence was introduced in the state's case in chief in the former trials. Of course, whether it was so used in the former trials is not decisive of the question. It is always desirable there should be an orderly presentation of proof. Rules pertaining thereto, however, are directory, not mandatory. An alteration in the prescribed customary order rests in the sound discretion of the courts. Whether such discretion was abused here requires consideration of the record, which has been thoroughly scrutinized.

Without narrating the detailed cross-examination of the appellant or the state's evidence in rebuttal thereto it should be stated at the outset the evidence *in both instances pertained to material and not to merely collateral issues.*

Although in the third trial appellant admitted his voluntary written confession of both murders he attempted in his oral testimony on the trial to repudiate the truth of the confession generally and to deny the correctness of certain specific admissions therein contained. When he took the stand in his own behalf for such purpose he placed his veracity squarely in issue. It is elementary that rebuttal evidence of an impeaching character as to wholly collateral matters is not competent; that the state is bound by answers to such inquiries on cross-examination but that impeaching evidence as to subject matter pertaining to a defendant's guilt and to his admissions thereof is entirely proper.

The fact rebuttal evidence employed by the state may have been entirely admissible in its case in chief for the purpose of corroborating the confession generally or some detailed statements therein contained did not render it inadmissible as rebuttal evidence for impeachment purposes when appellant undertook to repudiate the substance of his confession or details thereof in his oral testimony. The state was not compelled to anticipate appellant would attempt to repudiate the effect of his confession or details thereof on the third trial or, if so, to what extent. Whatever defenses appellant advanced in his oral testimony to his former written voluntary confession were proper matters for rebuttal. The use of evidence on

rebuttal and the extent of the rebuttal rested in the sound discretion of the trial court. Touching these subjects see *State v. Reick*, 43 Kan. 635, 637, 23 Pac. 1076; *State v. Curtis*, 108 Kan. 537, 196 Pac. 445; *State v. Lawn*, 132 Kan. 523, 524, 296 Pac. 696; *State v. Parker*, 166 Kan. 707, 710, 204 P. 2d 584; 53 Am. Jur., Trial, §§ 118, 120, 121, 128, 129; 6 Wigmore on Evidence, 3d ed.'§§ 1867, 1873.

The trial court gave appellant the privilege of surrebuttal. He does not contend there was any restriction on his generous exercise of the privilege. Nor was appellant taken by surprise by the rebuttal testimony. He concedes these witnesses were endorsed on all informations and used in the state's case in chief in the former trials where appellant had full opportunity to cross-examine them at length. No cases relied on by appellant are inconsistent with the views herein stated.

Appellant asserts the trial court erred in refusing to give instruction 18 or its substance on the subject of a confession. The instruction had been given in the first trial, was requested by appellant on both the second and third trials but was refused. The court instead gave instruction 19. The merit of instruction 19 is argued under one of appellant's subsequent contentions pertaining to instructions given and that subject will be treated later. The point appellant seeks to make presently is to the effect that instruction 18, being, in his view, a correct instruction and that having been given in the first trial, it should have been given in the third trial. The portion of the contention that the same instruction should have been given on the third trial because it was given in the first trial is tantamount to a contention the instruction became the law of the case. That particular contention is untenable and appellant cites no authority to support it. Instructions given at the first and second trials did not become the law of the case when those prosecutions resulted in mistrials. There was no appeal from either of the first two trials. This left the case wholly undecided. The third trial, a new trial, was a trial *de novo*. The case proceeded as though it had never been tried before. See G. S. 1935, 62-1601, 62-1602; 23 C. J. S., Criminal Law, § 1426; 39 Am. Jur., New Trial, § 217.

Appellant contends the court gave a coercive instruction after the jury had failed to agree following almost two days of deliberation. In determining whether an instruction given at that time constitutes reversible error the instruction, the circumstances existing at the time it was given and its probable effect in the light of the en-

tire record must be considered. (*State v. Pyle,* 143 Kan. 772, 57 P. 2d 93.)

It appears the jury deliberated about an hour before 5:00 p. m. on May 4, also the 5th of May and until noon of May 6. At the latter time the foreman upon inquiry by the court indicated they were not making much progress and were not evenly divided. The view of the majority was in nowise indicated. Following the lunch hour the jury deliberated until 3:55 p. m. on May 6 when the court again inquired as to progress and the foreman, in substance, said:

They were not having difficulty with the instructions but had made no progress and there had been no change in the position of the jurors since noon.

It appears copies of the instruction in question were at that time given to counsel for the respective parties and it was agreed objections by either party would be considered as having been made before the instruction was given. The instruction was read to the jury. The jury continued its deliberation until 5:00 p. m. of that day, May 6. Upon inquiry by the court at that time whether the jury had made progress the foreman said, "I doubt it." The jury was allowed to separate for the night and on the next day, May 7, deliberated from 9:30 a. m. until 11:50 a. m. when it reached a verdict of guilty on the count charging the murder of Kenneth Wynn. Defense counsel asked to have the jury polled. Each juror upon being asked, in substance, if the verdict of guilty *was his verdict,* replied, "It is." The court finding that agreement on the other count was impossible discharged the jury.

The instruction reads:

"Gentlemen of the Jury: It appearing at this time that it is hardly possible that a misunderstanding or disagreement among you as to the law or the interpretation of the instructions should exist in view of the fact that the Court has quite fully instructed you as to the law of the case, that your deliberations have already been prolonged too long without an agreement being reached, I deem it necessary to the administration of justice that this further instruction relative to your duties as jurors be given.

"You should consider that this case must at some time be decided; that you have been selected in the same manner and from the same source as any future jury must be; that there is no reason to suppose that the case will ever be submitted to twelve more intelligent, more impartial, or more competent persons to. decide it, or that more or clearer evidence will be produced on the one side or the other;. that in order to bring twelve minds to a unanimous conclusion you must examine the questions submitted to you with candor and a proper regard and deference to the opinion of each other; that you ought to pay proper respect to each other's opinions, and listen, with a disposition to be

convinced, to each other's argument. If a majority of your number are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression on the minds of so many men equally honest and intelligent with himself, who, under the sanction of the same oath, have heard the same evidence, with the same attention and an equal desire to arrive at the truth. On the other hand, if a majority of you are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment from which so many of their number dissent and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows. And while at last each juror must act upon his own judgment concerning the evidence in the case, and not upon the judgment of his fellows, it is your duty, guided by the foregoing and by all of the instructions heretofore given in this case, to decide the case, if you can conscientiously do so.

"It is, accordingly, ordered by the Court that you be returned to your jury room for further deliberation."

Appellant contends the instruction amounted to telling the jury it had already deliberated too long and that it must agree on a verdict; knowing there was a majority and a minority view the instruction constituted an attempt to coerce the minority into submitting to the will of the majority. Appellant cites no cases in support of the contention. Appellee refers to the last two decisions of this court pertaining to alleged coercive instructions. (*State v. Pyle*, supra; *Eikmeier v. Bennett*, 143 Kan. 888, 57 P. 2d 87, both being decided May 9, 1936.) These decisions will be mentioned later.

Appellee reminds us this case had been tried twice before, substantially the same instruction was given without objection by appellant and it did not result in coercion in those trials. Those facts did not preclude appellant's objection to the instruction at the third trial.

It should be said at the outset that although the statement in the instruction to wit: "You should consider that this case must at some time be decided . . .", cannot well be said to be coercive, it was not an accurate statement. While a jury should reach an agreement if possible it is not legally obliged to do so. This fact, however, was recognized by the court in the concluding part of the instruction which told the jurors it was their duty to decide the case ". . . if you can conscientiously do so."

It is true the court knew there existed a majority and minority view. How the majority leaned nobody knew. We think it must be conceded the language of the instruction was at least as fair to appellant as to the state irrespective of whether the majority then leaned towards acquittal or conviction. In other words the instruction did not discriminate against appellant.

The real questions are whether the language employed was actually coercive in character as to the minority and whether it reasonably can be said to have had that effect. These questions will be treated in that order.

The instruction first directed every juror to fairly consider the views of every other juror. It then stated the members of the minority should consider whether a doubt they entertained was a reasonable one. In the same instruction the court, however, further informed the jury that in the final analysis ". . . each juror must act upon his own judgment concerning the evidence in the case, *and not upon the judgment of his fellows* . . ." (our italics) that it was their duty to be guided by all the instructions given and to decide the case, *if they could conscientiously do so.* The court in two other separate instructions directed the jury that *each and every one of them* must be convinced beyond a reasonable doubt of defendant's guilt before they could convict him.

We turn now to a consideration of facts and circumstances after the instruction was given. We first notice the instruction had no immediate coercive effect and none during the remainder of that day. Thereafter the jurors retired to their homes and had an opportunity to reflect privately that evening and the next morning until 9:30 a. m. They deliberated further together until five minutes before the noon hour. The verdict was not reached until approximately twenty hours after the instruction was given. Although not in conference that entire period it cannot well be said the decision constituted hasty action. When each juror was polled separately and asked whether this was *his* verdict each of them replied, "It is." Nor can we lightly brush aside the persistent thought the instruction did not coerce a conviction on the other count, concerning which the confession was likewise clear and positive.

We shall not endeavor to again review our numerous previous cases touching the subject of belated instructions. Such review was carefully made in *Eikmeier v. Bennett,* supra, and referred to in the case of *State v. Pyle,* supra. In the Eikmeier case the jury returned its verdict within less than two hours after the alleged coercive instruction was given. In the Pyle case the jury deliberated one full day after such instruction was given when the presiding judge, in substance, repeated the same instruction and a verdict was reached four hours later. The belated instructions in the Eikmeier and Pyle cases are found in the respective opinions and need not be restated

here. They have some features similar and some dissimilar to those in the instant instruction. Although this court disapproved the instruction in the Pyle case it refused to reverse the judgment on the ground the record revealed nothing approaching the gravity of prejudicial error and that the court had no misgiving as to the justice of the result. It was said:

"Our reports are laden with cases bearing on this subject. An exhaustive review of them by Mr. Justice Thiele appears in one of our current decisions, *Eikmeier v. Bennett*, post, p. 888, 57 P. 2d 87. The general tenor of our decisions over a long period of years is one of disapproval, although we have seldom held that such instructions, belatedly given, were so prejudicially erroneous as to compel a reversal of the judgment. In each of them this court has endeavored to get a comprehensive view of the situation, the circumstances and the entire record and to rule accordingly." (p. 781.)

In view of the total record in this case and in harmony with the views expressed in the Pyle case we are persuaded we would not be justified in reversing the judgment in the instant case.

Counsel for appellant argue appellate courts should make no distinction between error and prejudicial error. This court indeed would be relieved of many troublesome problems were it permitted to adopt that policy. The point counsel for appellant overlook is that this court is not permitted to ignore a plain legislative mandate in order to make its burdens less difficult. G. S. 1935, 62-1718 of our criminal code provides:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The statute is not permissive but mandatory. It does not say the court *may* give judgment without regard to technical errors or defects, etc. It says, ". . . the court *must* give judgment. . . ." (Our emphasis.) See numerous cases collected under this statute.

We now turn to appellant's complaint concerning instruction 19 on the subject of the confession. It is argued the instruction was erroneous in that it failed to correctly state the law relative to the weight and effect to be given to confessions. The pertinent part of the instruction given reads:

"In deciding the question of the weight to be given to the confession of the defendant you should take into consideration all of the evidence in the case, the possibility or impossibility of the wrongful acts therein set forth, the probability or improbability of such acts, as well as any evidence that has been received by you which tends to corroborate or deny the matters set forth

in the written confession of guilt, according to the rules given you in the other instructions."

We discern nothing wrong or inadequate with that part of the instruction nor is it out of harmony with what was said on the subject in *State v. Seward,* 163 Kan. 136, 181 P. 2d 478, cited by appellant. The argument is the instruction should have stated the jury should give the confession whatever weight the jury believed it was entitled to. That is the effect of the instruction and the other instructions to which instruction 19 expressly refers.

It is also argued the instruction placed too great emphasis upon the fact a confession was a statement against interest. That is precisely what a confession freely and voluntarily made is. Such a confession is evidence of the most satisfactory character and is deserving of the highest credit. (*Hopt v. Utah,* 110 U. S. 574, 28 L. ed. 262, 267, 4 S. Ct. 202.) The fact a voluntary confession is a statement against interest of the person making it was not overemphasized in the instructions.

It is further urged the instruction should have advised the jury it might believe all, a part, or none of the confession. At the end of the instruction first quoted on the subject presently under consideration the jury was expressly referred to the rules given it in other instructions. In other instructions the jury was advised they were the sole and exclusive judge of the facts proven, of the weight of the evidence and the credibility of the witnesses; that all instructions were to be considered by the jury in their entirety. The instructions as a whole were entirely adequate and the particular instruction on the subject of a voluntary confession was probably more favorable to appellant than the law required. Touching the particular complaint the instruction pertaining to a confession did not expressly tell the jury they might believe all, a part, or none of the confession it is noted appellant's own requested instructions did not contain that statement.

Counsel for appellant complain the instruction given did not require the state to prove that all the statements and declarations contained in the voluntary confession *were made and were true.* As previously indicated in a former portion of this opinion the trial court had given such an instruction (No. 18) in the first and second trials but refused to give that portion of the instruction on the third trial. We think the trial court was entirely correct in refusing to again give that portion of the instruction. It was ad-

mitted on the third trial the written confession was voluntarily made.

It, however, was and is appellant's contention there were some discrepancies in the statements contained in the confession. There were no discrepancies in the voluntary confession with respect to the actual commission of the crimes. Assuming, however, there were discrepancies in the confession, some as to nonessential matters, the state did not have the burden of proving the correctness of such matters in order to sustain a conviction. The jury may have believed appellant did not tell the exact truth with respect to some of such matters and yet believed he was entirely truthful relative to the commission of the crimes. It frequently occurs there are some discrepancies in confessions and there was testimony in this case that this does happen. In any event the state had the burden of proving beyond a reasonable doubt appellant committed the crimes. The jury was clearly so instructed. The complaints with respect to the instruction on the confession are not well taken.

Appellant argues he was entitled to be tried by a jury selected from a panel containing both men and women. This panel contained only the names of men. Appellant makes five contentions, the substance of which will be treated. It may be well to note, and it is conceded, women were not deliberately excluded from the jury lists for this particular trial. It is admitted women had not served on Sumner county juries for twenty years or more. Due to facilities in connection with jury service deemed inadequate for women jurors by the district judge and, by reason of the fact women could not be compelled to serve under our law, the district judge concluded it was unnecessary to list them as jurors. Appellant says the district judge directed the assessors not to list them. Accurately speaking, the district judge did not act in his official capacity but outside of it. He had no authority to advise the assessors. They failed to inquire of women whether they desired to serve, as they were required to do by G. S. 1935, 43-117, and accordingly their names were not placed on the assessors' reports. Insofar as the record discloses there is no indication the local bar previously had not been in sympathy with the practice. This statement, however, is not to be interpreted as legal justification for a failure of the officers to comply with the law.

Other irregularities appeared in the selection of the jury panel in that some jurors had been selected from enumeration lists instead

of from assessment rolls as required by statute and jurors had been selected from the assessment rolls for the current year rather than from the assessment rolls of the preceding year, as required by G. S. 1935, 43-102.

Appellant's counsel, as they had done in the previous trials, moved to quash the panel by reason of such irregularities. In *State v. Snyder*, 126 Kan. 582, 270 Pac. 590, it was held:

"Where the jurors constituting the panel have been legally returned, drawn and summoned, it is not error to overrule a challenge to the array made on the ground that the township trustee did not return the names of women electors to serve as jurors, and had not raised the question with the women electors in his township whether or not they desired jury service." Syl. ¶ 1.)

In the instant case counsel for appellant introduced women witnesses in support of his motion to quash the panel. They testified they would not have claimed their exemption had they been asked whether they would serve. In the Snyder case, *supra*, the county attorney admitted there were qualified women electors whose names were on the assessment rolls and who would not have claimed exemption from jury service if they had been asked that question by the assessor. In that case this court said:

"We are of opinion that the failure of the township trustee to return the names of women electors was not a sufficient reason to sustain the defendant's challenge to the array. *True, the officers should have been more diligent in the performance of their duties, but it does not appear that a fair jury was not obtained or that the defendant was in any way prejudiced.* The record discloses that the defendant waived his last peremptory challenge, and there is no showing that any juror retained in the case was disqualified or that the defendant was in any way prejudiced by the retention of any juror. Other than as stated, there was no showing that the panel of jurors drawn for the term of court in question was not fairly returned, drawn and summoned." (Our italics.) (p. 584.)

In the instant case, however, the trial court nevertheless found the irregularities vitiated the panel and quashed the panel pursuant to appellant's motion. Naturally the question then arose concerning the proper procedure for providing a new jury. The trial court believed G. S. 1935, 43-128, provided the procedure and ruled accordingly. That statute reads:

"That whenever it shall be made to appear to the court that the township trustees and mayors of cities, as provided for in the act to which this is an amendment, have failed to make the lists from the assessment rolls of the previous year, *or that from any other cause* the lists furnished by them to the county clerk or the names taken therefrom and deposited in the jury box have been so returned or deposited as to vitiate a panel drawn therefrom, *it shall be*

*the duty of the judge* of such court to forthwith select a sufficient number of jurors for the term, and cause a venire to issue for the same, naming·the jurors so selected therein." (Emphasis supplied.)

Appellant argues the action of the court constituted error, that the court should have followed the procedure prescribed in G: S. 1935, 43-129, citing *State v. Jenkins*, 32 Kan. 477, 4 Pac. 809; *A. T. & S. F. Rld. Co. v. Davis*, 34 Kan. 199, 8 Pac. 146; and *State v. Edwards*, 64 Kan. 455, 67 Pac. 834. The point has been decided adversely to appellant's contention. (*State v. Schmidt*, 74 Kan. 627, 87 Pac. 742 [in which the two statutes under consideration were cited and the appropriate function of each discussed]; *State v. Allen*, 98 Kan. 778, 785-786, 160 Pac. 795; *State v. Snyder*, supra.) The principal cases relied on by appellant are discussed in *State v. Snyder*, supra, and *State v. Allen*, supra. In the Allen case the court said:

"There is a complaint that the jury was not selected according to law. The court sustained the defendant's challenge to the array, and discharged the panel because the original names in the jury box had not been selected from the assessment rolls of the previous year. Thereupon the judge proceeded to select a jury for the term, following the provisions of section 4624 of the General Statutes, of 1909, which requires the judge to select a sufficient number of jurors for the term and to name those selected, whenever for any cause the lists have been improperly returned. It is contended that the township trustees should have been summoned and required to select the lists of jurors. Aside from the fact that such a method would have been cumbersome and the cause of unnecessary delay, *the procedure which the court followed is authorized by the section of the statute just cited.* It was so decided in the case of *The State v. Schmidt*, 74 Kan. 627, 87 Pac. 742. In the opinion in that case the distinction between the situation here and that involved in *The State v. Edwards*, 64 Kan. 455, 67 Pac. 834, cited in support of defendant's contention, was pointed out. *Moreover, there is nothing to indicate that defendant suffered any prejudice by the manner in which the jurors were selected."* (Our italics.) (p. 785-786.)

Even though the court had followed the suggestion of appellant's counsel and pursued the procedure under G. S. 1935, 43-129 the trustees and mayors therein mentioned could not have included women as prospective jurors because there were no lists of eligible women who had not claimed exemption. The court called this fact to the attention of appellant's counsel.

It will be noted G. S. 1935, 43-128 states that in the event the designated officers ". . . failed to make the lists from the assessment rolls of the previous year, *or that from any other cause* the lists furnished by them to the county clerk or the names taken therefrom and deposited in the jury box have been so returned or deposited as to vitiate a panel drawn therefrom, *it shall be the duty*

*of the judge of such court to forthwith select* a sufficient number of jurors for the term. . . ." (Our italics.) The statute in nowise directs whom the judge shall select as jurors or what method he shall employ in making the selection. It was not claimed there was anything inherently wrong with the jurors individually composing the quashed panel. The court appointed substantially the same jurors who composed the original panel, after eliminating those who had been excused for various reasons. The state reminds us none of such jurors was challenged for cause on the *voir dire* examination by appellant's counsel as they had a right to do. (G. S. 1935, 62-1410, 62-1412, 60-2906.) Appellant's right to now complain concerning those jurors may have been waived but we prefer not to determine the question before us on that ground, under all the existing circumstances. Neither the liberty of a citizen nor the rights of society should turn on a technicality especially where fundamental principles of justice have charted a clear course.

Unlike the experience in the first and second trials the jury panel was exhausted on the third day. The trial judge made an order directing the county clerk in the presence of the sheriff, the clerk of the district court and the register of deeds to draw the names of 175 persons from the jury box provided for the drawing of a regular panel of jurors, to be submitted to the judge for final selection and approval. Thirty-seven names were drawn and the jury box was found to be exhausted. The judge ordered the same county officials to list 138 more persons from the county tax rolls possessing the qualifications of jurors. The record discloses the order to such county officials was made ". . . as an aid to this Court in making the selection of qualified veniremen. . . ." The list of jurors was submitted to and approved by the trial judge. The sheriff was directed to serve them with summons, did so and made his return.

Appellant asserts the trial judge could not delegate his power to select the jurors. The point is not good. The county officials did not select the jurors. They simply served as an aid to the trial judge in providing a list for selection. The record shows he ordered the list of names to be submitted to him for his own approval and that he gave it his independent approval. That was his duty. He exercised it under proper authority. (*Moore v. Nation,* 80 Kan. 672, 103 Pac. 107; *Walker v. United States,* 93 F. 2d 383.) There is no evidence the officers who aided the court acted otherwise than in good faith. Speculation to the contrary is entirely devoid of factual support.

The difficult problem presented by the lack of available appropriate accommodations for the two sexes frequently has been treated as a material factor in determining whether women and men should be called for jury duty. Decisions of trial courts to exclude women from jury service by reason of inadequate facilities have been sustained frequently. (*Hale v. Kentucky*, 303 U. S. 613, 82 L. ed. 1050, 1058, 58 S. Ct. 753; *People v. Parman*, 14 Cal. 2d 17, 92 P. 2d 387; *People v. Shannon*, 203 Cal. 139, 263 Pac. 522; *Commonwealth v. Garletts, Appel. (No. 2)*, 81 Pa. Superior Ct. 271; *Commonwealth v. Duca, Appellant*, 312 Pa. 101, 165 A. 825; anno. 9 A. L. R. 2d 661, 670, 671.)

The courtroom in Sumner county is located in a public building but it is not in a courthouse. The trial court had the responsibility of determining whether the facilities would be adequate for women jurors in the event it should at some stage of the proceedings conclude that safeguards for a fair trial required the jurors should be kept together. Statutory authority exists for keeping the jury together. The trial court may exercise its judicial discretion in determining the matter. (G. S. 1935, 62-1448, 62-1603; *State v. McNeil*, 59 Kan. 599, 53 Pac. 876; *State v. Howland*, 157 Kan. 11, 138 P. 2d 424.)

Appellant undertook to show the court erred in concluding the facilities were inadequate for women jurors. The only evidence appellant introduced to overthrow the court's judgment in the premises, that we are able to find in the record, is there were toilet facilities for women jurors if the women left the jury room and passed through the office of the clerk of the district court. Appellant made no showing whatever of any facilities for feeding the jurors together or of sleeping facilities in the courthouse, or adequate feeding and sleeping facilities in the hotels in case the jury were kept together. There is no contention any of such facilities existed. Under these circumstances an appellate court cannot well say the trial court abused its judicial discretion and acted arbitrarily with respect to the exclusion of women jurors.

Appellant argues the jury was not kept together in this case. That is not the answer. As indicated a situation might have arisen at any moment requiring the court, in the exercise of sound judicial discretion, to keep the jury together. This is particularly true in a case such as this which had extended over two long previous trials and had resulted in hung juries. In any event we are convinced there

was no attempt to discriminate against appellant in the exclusion of women jurors. There is not the slightest indication appellant was prejudiced by their absence from the jury.

Appellant also contends the systematic exclusion of women from the jury panel violated his rights under the state and federal constitutions and amendments thereto, citing, *Glasser v. United States,* 315 U. S. 60, 86 L. ed. 680, 62 S. Ct. 457; *Thiel v. Southern Pacific Co.,* 328 U. S. 217, 90 L. ed. 1181, 66 S. Ct. 984; *Ballard v. United States,* 329 U. S. 187, 91 L. ed. 181, 67 S. Ct. 261. Those decisions will be noted presently.

We shall first consider our own constitution. It makes no provision for women jurors. Appellant concedes all our state constitution provides is a public trial "by an impartial jury." (Bill of Rights, § 10.) It already has been demonstrated appellant's motion to quash the original jury panel was sustained and that a new panel was selected as provided by law. Appellant does not contend a state legislature is without power to provide the procedure for the selection of a jury in the event the former selection of a jury list was, for any cause, not made by the designated officers in the manner provided by law. The procedure provided by our legislature in such a situation was followed. The statutory procedure contravenes no provision of our state constitution. Appellant offered no testimony on the motion for a new trial, and we find no contention now, any juror who served was biased or for any other cause was not an entirely fair and impartial juror.

Did the exclusion of women jurors infringe on any provision of our federal constitution? It likewise makes no mention of women jurors. The only possible applicable provision in the federal constitution is the due process clause of the fourteenth amendment. Do the decisions of the Supreme Court of the United States, previously cited, determine the practice of state courts on the subject under consideration? We do not so read them.

Federal rules with respect to the exclusion of women jurors are set forth in the Ballard case, *supra.* That rule is confined strictly to federal juries and not to juries in state courts. That on appeals from state courts the federal rule does not apply is clearly demonstrated in the last published pronouncement of the United States Supreme Court on the subject in *Fay v. New York,* 332 U. S. 261, 91 L. ed. 2043, 67 S. Ct. 1613, (1947). Manifestly we have no quarrel with rules governing the federal practice with respect to

women jurors. In substance that practice is now followed without rules in various judicial districts of this state. Women jurors are properly recognized as rendering a service fully equal to that of men. In some districts, however, where facilities are wholly inadequate for women jurors in case it should be considered protection of the judicial process required jurors to be kept together, an entirely different practical problem arises.

The Fay case, in our opinion, makes it indelibly clear the federal rule stated in the United States Supreme Court cases previously cited does not and is in nowise intended to govern the practice in state courts. The opinion in the Fay case, after reviewing the history of including women on juries, states:

"It would, in the light of this history, take something more than a judicial interpretation to spell out of the Constitution a command to set aside verdicts rendered by juries unleavened by feminine influence. The contention that women should be on the jury is not based on the Constitution, it is based on a changing view of the rights and responsibilities of women in our public life, which has progressed in all phases of life, including jury duty, but has achieved constitutional compulsion on the states only in the grant of the franchise by the Nineteenth Amendment. We may insist on their inclusion on federal juries where by state law they are eligible but woman jury service has not so become a part of the textual or customary law of the land that one convicted of crime must be set free by this Court if his state has lagged behind what we personally may regard as the most desirable practice in recognizing the rights and obligations of womanhood." (p. 289.)

And in the same opinion it is further said:

"Well has it been said of our power to limit state action that 'To stay experimentation in things social and economic is a grave responsibility. Denial of the right to experiment may be fraught with serious consequenses to the Nation. It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.' Mr. Justice Brandeis, dissenting in *New State Ice Co. v. Liebmann,* 285 US 262, 311, 76 L ed 747, 771, 52 S Ct 371." (p. 296.)

and

"As there is no violation of a federal statute alleged, the challenge to this judgment under the due process clause must stand or fall on a showing that these defendants have had a trial so unfair as to amount to a taking of their liberty without due process of law." (p. 296.)

Appellant complains women were excluded from the panel. He is not a member of the excluded class. In the Fay case, *supra,* the Supreme Court of the United States said:

"This Court, however, has never entertained a defendant's objections to exclusions from the jury except when he was a member of the excluded class." (p. 287.)

The great weight of authority is in harmony with this rule. It is that a male defendant cannot complain concerning the exclusion of women from a jury panel, unless he has actually been prejudiced thereby. (*Bailey v. State*, 215 Ark. 53, 219 S. W. 2d 424, 9 A. L. R. 2d 653, [1949].) See the very recent and exhaustive A. L. R. annotation following the Bailey case, p. 661.

In the Bailey case the Arkansas court carefully noted the United States Supreme Court decisions heretofore cited. It referred to the exclusion of women under the federal rule and said:

". . . but this rule has not been extended to state court trials—and certainly there are no expressions indicating that the discretion permitted commissioners under a State constitution such as ours would be controlled without a showing of conduct resulting in prejudice. See State v. Taylor, 356 Mo. 1216, 205 SW 2d 734, 738."

We have considered the grounds of the motion for a new trial. They present nothing of consequence not already treated. There are voluntary confessions a defendant should not expect an impartial jury and the ablest of counsel to overthrow. An examination of the entire record leaves us fully convinced there is ample competent evidence to support the conviction and that appellant had a fair trial by an impartial jury.

The judgment is affirmed.